JAMES MCKIE *et al.* V. THE STATE OF KANSAS.

No. 14,550.   (85 Pac. 827.)

SYLLABUS BY THE COURT.

APPEARANCE BOND—*Forfeiture—Authority of Sheriff to Take Bail.* A defendant in a felony case was bound over to the district court and in default of bail was imprisoned in the county jail under a commitment issued to the sheriff according to the provisions of section 56 of the criminal code (Gen. Stat. 1901, § 5496), upon which bail in the sum of $300 was indorsed. When the district court convened the case was continued and an order was made and entered upon the journal that the defendant enter into a recognizance in the sum of $500 for his appearance at the next term, and that in default of bail he should be committed to the county jail. The defendant remained in jail for several months, when he gave a recognizance, which the sheriff took and approved, by virtue of which he was released from custody. At the time the recognizance was given the original commitment was not in the sheriff's possession, the increased amount of bail was not indorsed upon it, and no certified copy of the journal entry of the order of the district court had been delivered to the sheriff. *Held*, the defendant was in lawful custody and the sheriff was authorized to take his bail.

Error from Logan district court; JAMES H. REEDER, judge. Opinion filed June 9, 1906. Affirmed.

*Lee Monroe*, and *E. P. Hotchkiss*, for plaintiffs in error.

*C. C. Coleman*, attorney-general, and *W. H. Wagner*, county attorney, for The State; *Roark & Roark*, of counsel.

The opinion of the court was delivered by

BURCH, J.: Complaint was made in writing before a justice of the peace charging James Clark with a felony. A warrant was duly issued, upon which he was arrested and brought before the magistrate. He waived a preliminary examination and was bound over to the district court. In default of bail the following commitment was issued and executed:

"STATE OF KANSAS, LOGAN COUNTY, SS.

*"The State of Kansas to the Sheriff of said County, Greeting:*

"WHEREAS, It appearing that the offense of grand larceny has been committed, and there is probable cause to believe that the defendant, James Clark, is guilty of the commission of said offense; and, whereas, no sufficient bail has been offered in said defendant's behalf, for his appearance at the next term of the district court of said county, to answer said charge alleged against him; you are therefore commanded to take and commit the said defendant to the jail of Logan county, there to remain until he shall be discharged by law. And deliver this writ to the jailer thereof.

"WITNESS MY HAND," etc.

On the back of this writ was indorsed the following: "Bail required, $300 dollars."

The accused remained in jail until the next term of the district court, when he waived arraignment and pleaded not guilty to an information which in the meantime had been filed. On the next day after these proceedings the district court made the following order, which was duly entered upon the journal:

"And now on this 15th day of April, 1903, it being the succeeding day of said term, this cause comes on again for hearing, and is upon the application and consent of both plaintiff and defendant continued until the next regular term of this court, and defendant is ordered to recognize in the sum of $500 for his proper appearance at said term of said court, and in default thereof to be committed to the county jail of said Logan county."

The sheriff continued to keep the accused confined in jail until July 8, 1903, when his release was procured by giving to the sheriff the following recognizance (formal parts omitted):

"WHEREAS, Upon good cause shown, the above-entitled action is this 15th day of April, 1903, continued for trial unto the next term of the district court for Logan county: Now, we, the undersigned, residents of Logan county, Kansas, bind ourselves to the state of Kansas in the sum of $500 that said James Clark shall

be and appear before the judge of the district court for Logan county to answer the information in said cause presented and filed against said James Clark and abide the judgment of the above-named court, and not depart the same without leave.     JAMES CLARK, *Principal.*
"B. O. McKIE,
 JAMES McKIE,
 JANE E. DAYKINS,
           *Sureties.*
"Approved by me this 8th day of July, 1903.
                         J. E. NOLIND,
                    *Sheriff of Logan County.*"

The recognizance was duly certified to the clerk of the court and recorded in the recognizance docket. The original commitment was filed with the justice of the peace who issued it and by him transmitted to the district court with the other papers in the case. Apparently a certified copy of the journal entry of April 15, 1903, was not delivered to the sheriff and at the time the recognizance was taken he had in his possession no written document commanding the detention of the prisoner.

The accused did not appear, the recognizance was duly forfeited, and in an action against the sureties it was claimed that the foregoing facts show the principal in the recognizance was not in legal custody when it was given, that the sheriff had no authority to take it, and hence that it created no liability. Judgment was rendered for the state, and the same propositions are urged in this proceeding in error.

The authority of the sheriff to take bail may be rested upon the provisions of section 143 of the code of criminal procedure, which reads as follows:

"A sheriff or other officer arresting a person under a warrant or other process, or holding a person in custody under a *mittimus,* in or upon which warrant or *mittimus* it shall appear that the person is to be admitted to bail in a specified sum, may take the bail and discharge the person from actual custody." (Gen. Stat. 1901, § 5585.)

The original commitment was issued in strict com-

pliance with section 56 of the code of criminal procedure, which reads as follows:

"If the defendant is committed to jail, the magistrate shall make out a written order of commitment, signed by him, which shall be delivered to the jailer by the officer who executes the order of commitment. He shall indorse upon the order of commitment the sum in which bail is required." (Gen. Stat. 1901, § 5496.)

That instrument contained a command to keep the accused in custody until he should be discharged by law, and constituted continuing lawful authority to hold the prisoner until it was supplanted by something sufficient for the purpose. If it be true that the order of the district court did not *ipso facto* create a new and paramount authority for the detention of the prisoner, and could not do so until a copy of it under seal was placed in the sheriff's hands, then the original writ was not superseded and custody by virtue of it continued to be lawful. The case is quite like that of *The State of Mississippi v. Brown,* 32 Miss. 275. After indictment found the accused was arrested upon a *capias* and held in custody. A mistrial ensued and an order was entered of record that the sheriff admit to bail in a sum named, with good security. The sheriff took a recognizance, which was broken, and in reversing a judgment discharging the sureties the court said:

"It is held in *Pace v. The State,* 25 Miss. 54, that, under the provisions of the act of 1822, Hutch. Code, 444, § 13, the sheriff is only authorized to take a recognizance of bail from a party whom he may arrest on the process of a circuit court.

"In this case it appears that the accused had been arrested under such process, and for aught that appears in the record was in custody under that arrest at the time of the mistrial. He must be considered as in custody under the original arrest until it be shown that he was duly discharged. The order made by the court after the mistrial was in effect an order of recommitment until the defendant should give bail; and he was not discharged until he was bailed in virtue of the

McKie v. The State.

recognizance taken by the sheriff. He was in the meantime in custody under the original arrest by virtue of the process from the circuit court, and in such cases the sheriff has authority by the act above mentioned to take recognizances." (Page 277.)

The commitment described in section 56 of the criminal code (Gen. Stat. 1901, § 5496) is in fact a common-law *mittimus,* and is within the purview of the language of section 143 (Gen. Stat. 1901, § 5585). The fact that the order of the district court was effectual from the time of its making to increase the amount of bail and that the larger sum was not indorsed upon the *mittimus* did not change the character of the custody or deprive the sheriff of authority to take bail. Such an omission is a mere irregularity within the meaning of section 154 of the criminal code, which reads as follows:

"No action upon a recognizance shall be defeated, nor shall judgment thereon be arrested, on account of any defect of form, omission of recital, condition of undertaking therein, neglect of the clerk or magistrate to note or record the default of any principal or surety at the term or time when such default shall happen, or of any other irregularity, so that it be made to appear that the defendant was legally in custody charged with a public offense, that he was discharged therefrom by reason of the giving of the recognizance, and that it can be ascertained from the recognizance that the sureties. undertook that the defendant should appear before a court or magistrate for examination or trial for such offense." (Gen. Stat. 1901, § 5596.)

Under this statute a recognizance would be good if, after bail had been fixed, no indorsement whatever of the amount were made upon the writ of detention. In the case of *Trimble v. The State,* 3 Ind. 151, a statute similar in terms to the one just quoted was relied upon to sustain a judgment upon a recognizance. The report of the decision reads:

"The sheriff has no power to fix the amount of bail; and a recognizance wherein said amount was fixed by him would, therefore, probably be void. But the sheriff

has a right to take a recognizance in a sum fixed by the court, or an associate judge; and when he does take one in such a sum we do not think it void by reason of an omission, in the proper officer, to indorse such sum upon the writ. The plea, in this case, did not deny that the amount of bail had been fixed by the proper authority, nor that the sheriff took it in the amount fixed; but it simply denied that the amount had been indorsed upon the writ, and was, therefore, as we think, insufficient." (Page 153.)

In the case of *State v. Creech*, 69 Mo. App. 377, 381, it was said:

"It further appeared that the amount of the bail-bond was fixed by an order of the court. This authorized the sheriff to take the bond, although there was no specification of said amount on the warrant. *State v. Jenkins*, 24 Mo. App. 433."

The opinion in *State v. Jenkins, supra,* reads thus:

"This was, accordingly, a case where the sheriff had the defendant, Jenkins, in custody 'under warrant of commitment on account of failing to find bail,' within the language of section 1832, Revised Statutes; and he accordingly had the power to take the recognizance under the terms of the statute, unless we are to hold that he had no such power because the amount of bail required, instead of being 'specified on the warrant,' as the statute recites, had been fixed by an order of court entered of record. So to hold would be to stick in the bark of the statute." (Page 434.)

In the case of *George v. The State*, 3 Kan. App. 566, 43 Pac. 850, the syllabus correctly states the law, as follows:

"When a prisoner is legally in custody, charged with a public offense, and the justice of the peace has ordered that he be released from such custody upon furnishing a sufficient recognizance in the sum of $300 for his appearance at the next term of the district court, and such a recognizance is furnished and is approved by the sheriff, and the prisoner is discharged from custody and given his liberty by reason of giving such recognizance, *held*, that upon a forfeiture of such recognizance a recovery thereon cannot be defeated because the justice of the peace neglected to indorse

upon the order of commitment the amount of bail required."

The fact that the sheriff did not retain personal possession of the commitment did not destroy his authority. The document was easily accessible and could have been produced at any time in justification of his conduct. Its preservation was a matter of importance, but the prisoner was in lawful custody under it and bail might have been taken by virtue of it even if it had been lost or if the sheriff had destroyed it.

"The sheriff undoubtedly derives his power to take the recognizance, under section 2788 of the code, from the judgment of the justice of the peace making the commitment; and his action must strictly conform to the requirements of the judgment. This judgment is certified to him by the *mittimus,* but the loss of the certificate does not vacate the judgment, nor deprive the sheriff of the authority to take bail. If notwithstanding its loss he does take a recognizance in exact conformity with the judgment of the court, as set forth in the missing *mittimus* (as is affirmatively shown to have been done in the case at bar), the obligation will be valid and binding upon the principal and his sureties." (*Cornwell v. State,* 53 Miss. 385, 390.)

The case under consideration is clearly distinguishable from that of *The State v. Beebe,* 13 Kan. 589, 19 Am. Rep. 93, the syllabus of which reads:

"Where a person charged with the commission of a criminal offense is at liberty on bail, and his sureties, with his consent, but without any copy of the recognizance, deliver him to the sheriff, taking his receipt therefor, *held,* that the sheriff, without having any copy of the recognizance, cannot lawfully hold the accused in custody against his will; and, therefore, that the accused in such a case may escape from the custody of the sheriff without committing a felony, and also that any other person may assist him to escape without committing a felony."

When bail has been given and a prisoner discharged, all process for his detention becomes *functus officio;* and if the sureties afterward return him to custody

the sheriff must have new authority for holding him. The statute makes express provision for such cases, as follows:

"The bail must deliver a certified copy of the recognizance to the sheriff, with the principal; and the sheriff must accept the surrender of the principal and acknowledge it in writing." (Crim. Code, § 150; Gen. Stat. 1901, § 5592.)

In view of this statute the court rightly observed:

"There is no authority anywhere given to the sureties on a criminal recognizance to arrest their principal, or to hold him in custody, or to deliver him to the sheriff, without a copy of the recognizance; and there is no authority anywhere given to the sheriff to receive such principal, or to retain him in custody, unless he is also furnished with a copy of the recognizance. If the sheriff can hold a person in custody under such circumstances, without such copy, it is by virtue of some authority not found in the statutes. . . . Where a person has been arrested on a criminal charge, and afterward set at liberty on a recognizance, then he is as much entitled to his liberty as he ever was before, and cannot again be deprived of his liberty except by following the law. There can be no excuse for again arresting him, or holding him in custody, without written authority." (*The State v. Beebe*, 13 Kan. 589, 595, 19 Am. Rep. 93.)

The case of *The State v. Hollon*, 22 Kan. 580, has no application to the facts of this controversy.

The only authority which can be given to a sheriff to execute a sentence is a certified copy of the judgment of the court pronouncing it. (Crim. Code, § 256; Gen. Stat. 1901, § 5701.) In such a case the full jurisdiction of the court has been exercised. The prisoner is no longer held as a subject of its orders, to be made from time to time. Detention for lack of bail is at an end. A new and affirmative step is to be taken, which nothing but the statutory kind of process can justify. Hence, as the court held, if a person sentenced to confinement in the penitentiary break away from a sheriff who is attempting to convey him there without possess-

McKie v. The State.

ing a certified copy of the journal entry of the judgment, he is not guilty of an escape.

In this case Clark was, at the beginning, rightfully imprisoned by the sheriff under a *mittimus* duly issued, upon which bail in a specified sum was indorsed. Lawful at its inception, the custody could not become unlawful until something occurred producing such result; and once in existence, the power to take bail continued until some new fact revoked it.

The order of the district court was a further command of record to continue to keep the prisoner in custody until bail in an amount specified should be furnished, and since the prisoner was already in proper confinement it is difficult to perceive what function of substance a certified copy of the order had to perform.

"The record of the common pleas shows the order to commit made in open court. In such case a *mittimus* is not necessary—the order in court to the sheriff is his authority, and the evidence of it being preserved of record no writ or copy of the order was necessary." (*The State for Webb v. Heathman,* Wright [Ohio] 690, 691.)

"A prisoner who has been properly and legally sentenced to prison cannot be released simply because there is an imperfection in what is commonly called the *mittimus*. A proper *mittimus* can, if needed, be supplied at any time, and if the prisoner is safely in the proper custody there is no office for a *mittimus* to perform." (*The People, ex rel., v. Baker,* 89 N. Y. 460, 465.)

"But it is said further that the sheriff did not hold the prisoner under such authority as authorized the sheriff to take the bail. It fully appears that the sheriff held the prisoner under the judgment of this court reversing and remanding the cause and the specific direction therein to commit the prisoner to the Lincoln jail and the keeper thereof to await the action of the circuit court. No higher or greater authority is required by the law. The circuit court fixed the bail, and under these circumstances the sheriff, being in charge, accepted the bail. This is enough. Section 4380, Revised Statutes 1889, provides that it is sufficient if 'it

be made to appear from the whole record or proceeding that the defendant was legally in custody, charged with a criminal offense, that he was discharged therefrom by reason of the giving of the recognizance, and that it can be ascertained from the recognizance that the sureties undertook that the defendant should appear before a court or magistrate at a term or time specified for trial.' *State v. Morgan,* 124 Mo. 479, 28 S. W. 17. All of which amply appears in this record and the statute answers all the points made against the judgment. It is a wise and wholesome piece of legislation and should be enforced in the spirit of its enactment. There was no error in permitting the sheriff to testify he received the prisoner from the marshal of the supreme court and held him under the judgment of this court." (*State v. Austin,* 141 Mo. 481, 487, 43 S. W. 165.)

This court has remarked upon several occasions the sweeping effect of section 154 of the criminal code (Gen. Stat. 1901, § 5596) upon the old law relating to recognizances. It creates a statutory estoppel against the pleading by the obligors in such instruments of any but the most substantial defenses. As the supreme court of Arkansas has well said:

"This is not a criminal prosecution, but a common suit upon a bond for money, an action to enforce a civil contract between these sureties and the state. And we know of no rule requiring any greater strictness in construing this law than any other legislative act upon civil contracts, and instead of adhering to the utmost strictness, as in prosecutions for high crimes, we must give the law a fair and liberal construction to carry out the provisions of the statute and enforce the contract in the spirit of the law, and as it was understood between the parties, and such construction is clearly what was intended by the legislature, as shown by section 80 of the criminal code, in which it is enacted that no 'irregularity, so that it be made to appear that the defendant was legally in custody charged with a public offense, and that he was discharged therefrom by reason of the giving of the bond or recognizance, and that it can be ascertained from the bond or recognizance that the bail undertook that the defendant should appear before a magistrate for the trial thereof,

etc., shall render the bail-bond or recognizance invalid.' " (*Pinson et al. v. The State,* 28 Ark. 397, 400.)

The sheriff is an officer who has authority to take bail. Assuming the order of the district court to be of a higher character than the writ issued by the justice of the peace, it properly may be regarded as a precept of commitment in which bail in a specified sum appeared; and if strict formality required that a copy of it be issued to the sheriff, the failure to do so was an irregularity merely, the prisoner continued to be in lawful custody, and the sheriff had authority to take bail and discharge him.

The time and place of holding the next term of the district court of Logan county after April 15, 1903, were fixed by law, and all the matters specified by section 154 of the criminal code sufficiently appear in the recognizance.

No injury is shown to have resulted from the overruling of an objection to the admission of certain depositions because, though in the custody of the clerk, they had not been marked filed one day before the trial. Hence, the error, if any were committed, was not prejudicial. If the defendants had been misled or overreached in any particular, a different ruling might have been required.

"True, it was the duty of the clerk when he received it to have marked it filed. (Code, §§ 710-712.) But it was a purely formal act, which having been omitted the court should have ordered done at once. The omission of the clerk to note the fact of filing should not deprive the party of the right to use this testimony." (*Hogendobler v. Lyon,* 12 Kan. 276, 281.)

One of the defenses to the action was that the principal in the recognizance was killed by accident in the city of Omaha, Neb., before forfeiture, and evidence to that effect was introduced. On the part of the state various officials of the city of Omaha, and of Douglas county, Nebraska, in which it is situated, testified to keeping, by virtue of city ordinances and state laws,

records of deaths by accident in the city and county, upon which records the death of Clark did not appear. It is urged that the official character of the records was not proved by competent evidence. The legal authority for the records was a collateral matter. The fact that records actually were kept was the important thing and furnished a basis for the testimony to which objection is made. The weight of the evidence was materially increased because the witnesses believed they were acting under the compelling force of valid statutes and ordinances. If, however, those enactments had been in fact invalid, because, for example, they were unconstitutional, the evidence could not be rejected on that ground.

The judgment of the district court is affirmed.

All the Justices concurring.