No. 31,016.

AGNES G. CARTER, *Appellee,* v. T. J. McNALLY and THE McNALLY-PITTSBURG MANUFACTURING CORPORATION, *Appellants.*

(20 P. 2d 491.)

Opinion filed April 8, 1933.

*P. E. Nulton* and *G. L. Stevenson,* both of Pittsburg, for the appellants.

*C. O. Pingry, Carl Pingry,* both of Pittsburg, and *Edwin A. Harris,* of Kansas City, Mo., for the appellee.

The opinion of the court was delivered by

DAWSON, J.: Plaintiff recovered a judgment for damages sustained in a collision of automobiles, and defendant appeals, raising questions touching the regularity of depositions used in the trial, certain rulings and instructions of the court, and on the amount of the verdict.

1. We will notice these points *seriatim*. Plaintiff's evidence, in part, consisted of depositions taken before a justice of the peace in Johnson county. These were taken in shorthand and transcribed by one M. J. Bergeman, a notary public of Kansas City, Mo.; and when they were transcribed by him and subscribed by the deponents and authenticated by the justice of the peace, the Missouri notary mailed them to the district court with an indorsement on the outside of the sealed envelope which bore the title of the cause and the names of the deponents, but which, by inadvertence, bore his own name as a Missouri notary instead of the name of the justice of the peace before whom they were in fact taken. These depositions came through the United States mail to the clerk of the district court and were filed by that officer on December 21, 1931. On February 1, 1932, they were opened at the request of counsel for defendant. Exceptions to the depositions, on account of the inaccurate recital on the outside of the envelope, were not made until May 24, 1932, the day the cause was set for trial. A written exception on account of this inaccuracy was then made and overruled. Counsel for defendant cite the statute which provided:

"The deposition, so taken, shall be sealed up and indorsed with the title of the cause and the name of the officer taking the same, and addressed and transmitted to the clerk of the court where the action or proceeding is pending. It shall remain under seal until opened by the clerk by order of the court, or at the request of a party to the action or proceeding, or his attorney." (R. S. 60-2838.)

The authenticity of the depositions was not questioned. All formalities were observed in their taking; counsel for defendant appeared and cross-examined the deponents. Only the formal recitals on the outside of the sealed envelope were incorrect, and it was apparent that that inaccuracy was a mere inadvertence—the stenographer, being also a notary and familiar with the practice in cases where he served in the latter capacity, put his own name on the outside of the envelope instead of that of the justice of the peace before whom the depositions were taken.

It will be noted that although counsel for defendant must have become aware of the defective recitals on the *outside* of the envelope when the depositions were opened on February 1, 1932, yet no exception to them was made until May 24, 1932, when the case was called for trial nearly four months later. It does not lessen the significance of this fact that one of defendant's attorneys appeared

at the taking of the depositions on November 30, 1931; that a second caused the depositions to be opened in February; and that a third took the lead in the trial in May.

The inconsequential nature of the irregularity itself, especially in view of the long delay in filing any exception to the depositions, was not sufficient to bar their admission in evidence. *Vide* the uniform rulings of this court over a period of sixty years touching the admissibility of depositions, notwithstanding similar slight and unsubstantial objections or exceptions urged against them. (*Hogendobler v. Lyon,* 12 Kan. 276; *Whittaker v. Voorhees, Sheriff,* 38 Kan. 71, 15 Pac. 874; *St. L. & S. F. Rly. Co. v. French,* 56 Kan. 584, 44 Pac. 12; *McRae v. Piano Co.,* 64 Kan. 580, 68 Pac. 54; *McKie v. State,* 74 Kan. 21, 31, 85 Pac. 827; also, 18 C. J. 726; 8 R. C. L. 1161-1162.)

Following the trial and after appeal was taken, and on notice to defendant and with permission of the trial court, counsel for the appellee withdrew the depositions for the purpose of having the justice of the peace indorse his name on the envelope. Defendant assigns this superfluous maneuver as error. Plaintiff would justify it under R. S. 60-759, but since we have held the inaccurate recital on the envelope was immaterial in this lawsuit, this incident need not be considered.

Error is also assigned on an instruction which, so far as here pertinent, reads:

"27. . . . . And in arriving at the amount of her damages, if any, you may take into consideration the character and extent of such injuries, if any, together with any pain and suffering of body and mind, if any, which she has sustained or is reasonably certain in the future to suffer, occasioned by said injuries, if any."

Defendants' objection to this instruction is that—

"There was not a particle of evidence introduced at the trial to the effect that the plaintiff would, in the future, have any pain and suffering of body and mind, or that she was reasonably certain in the future to suffer pain of body and mind occasioned by said injuries, and on account of there being no testimony as to future pain. it is the contention of the appellants that the court erred in instructing the jury that in arriving at the amount of her damages they could take into consideration any pain and suffering of body and mind which she was reasonably certain in the future to suffer occasioned by said injuries."

It is literally correct that no witness, professional or lay, testified that plaintiff would continue to suffer after the trial. There was

ample testimony that she had suffered pain in body and mind ever since she was hurt in the collision caused by defendants' negligence, which occurred many months before the trial; there was evidence that at the time of the trial she was still suffering in body and mind from the accident, and it was a fair inference that she would continue to endure such suffering for some considerable time in the future. As there was nothing about this case to warrant a suspicion that it was a fake lawsuit, it could not be presumed that plaintiff would make an instantaneous recovery from her ailments the moment the jury retired to consider their verdict. Moreover, the record does not show that this particular point was raised at the trial, in which situation the rule announced in *Stewart v. Marland Pipe Line Co.,* 132 Kan. 725, 297 Pac. 798, applies. It was there said:

"Where an instruction to the jury was given during the trial of a case and no objection to it or request for its modification was made, and the instruction correctly stated the law, it is too late to raise the question that the instruction was not warranted by the evidence for the first time on an appeal to this court." (Syl. ¶ 4.)

The next error complained of relates to the giving of instruction No. 34, which reads:

"In answering these special questions, you are not to consider what effect your answer to any one or all of the special questions will have upon your general verdict, as that is a question for the court to determine."

Defendant contends that by giving this instruction—

"The court suggested to the jury that the answer by the jury of any one or all of the special questions submitted might have an effect upon the general verdict."

In support of this contention cases are cited where we have held that it is error to charge the jury that they should make their answers to the special questions harmonize with the general verdict. Here, however, we are asked to say that it is error for the trial court to instruct the jury that they should not consider what effect their answers to special questions would have on their general verdict. No case is cited, and we may be permitted to doubt if any exists, which carries this point to such an extremity. The error predicated on instruction No. 34 cannot be sustained.

It is finally urged that the verdict was excessive. It was for $4,-000, and its constituent items were shown in a special finding thus:

"Question No. 10: What amount of damages did you allow plaintiff for: (A) Medical attention and expense? A. $51. (B) Permanent injuries? A.—— (C) Pain and suffering? A. $3,724. (D) Damage to automobile? A. $200. (E) Loss and impairment of ability to perform household services? A. $25.

"Joe Lafayette, Foreman."

As we have so often said, error based on a claim that the verdict is excessive is difficult for an appellate court to review. (*Ellis v. Kansas City Public Service Co.,* 131 Kan. 555, 559-561, 292 Pac. 939; *Shrout v. Bird,* 135 Kan. 218, 9 P. 2d 673.) Here it was shown that plaintiff, 39 years old, before the accident giving rise to this action was strong and able to do her own housework and enjoyed excellent health. In the collision she was thrown to the top of her automobile, then jammed down between the seat and the dashboard and stunned; a lump the size of a hen's egg was formed on her head; her neck was severely twisted; her shoulder and arm were wrenched and bruised; her abdomen bruised; her back and hip wrenched and bruised; her right leg cut in two places. Her nervous system received a severe shock from which she was recovering but slowly when the trial took place some eight months after the accident. The twisting of her neck was peculiarly painful and for about three months prevented her from talking above a whisper. She continued to suffer from headaches, menstrual irregularities and sleeplessness at the time of the trial, and at that time, also, it pained her to talk above a whisper. Without summarizing the evidence showing the extent of plaintiff's injuries at greater length, it must be quite apparent, we think, that the record presents nothing this court can lay hold of to justify a remittitur, nor does it vindicate defendants' contention that error inheres in the size of the verdict or in the judgment based thereon.

The judgment is affirmed.