No. 31,518

JOHN W. SPONABLE, *Appellee*, v. H. R. THOMAS and GLEN WARNICKE, *Appellants*.

(33 P. 2d 721.)

Opinion filed June 9, 1934.

*Roy S. Lowe,* of Paola, *O. C. Mosman, Clay C. Rogers, Paul A. Buzard* and *Don E. Black,* all of Kansas City, Mo., for the appellants.

*Frank Merrill,* of Paola, *W. L. Cunningham, D. Arthur Walker, Fred G. Leach* and *William E. Cunningham,* all of Arkansas City, for the appellee.

The opinion of the court was delivered by

THIELE, J.: The above action was for damages for injuries sustained in an automobile accident. Plaintiff's wife was injured in the same accident, and an appeal from the judgment rendered in her case is also here for consideration. The facts applicable to both cases will be here stated.

The plaintiff and his wife reside at Paola, where the husband is a banker. On the night of February 3, 1932, about 7:30 p. m., they left Paola to go to Kansas City. It had been misting, raining, sleeting and at times snowing, and they drove slowly in a model A Ford coupé equipped with standard lights and brakes which were in good condition. Chains were on the rear wheels. The husband drove the car, and was using a mixture of alcohol and glycerine to soften the snow and ice which accumulated on the windshield. The car had an automatic windshield wiper on the driver's side. Between 10 and 10:30 p. m. they approached Overland Park from the south on highway 73E. Overland Park is about thirty-one or thirty-two miles from Paola. At that time it was snowing and sleeting; the windshield wiper kept that space of the windshield clean, but occasionally it would get coated and the husband would stop and clean it. About one mile south of Overland Park he stopped and cleaned all of the windshield. Highway 73E runs along the east side of Overland Park. Highway 58 runs east and west through that place and connects with highway 73E. Just before highway 58 reaches highway 73E it divides so that a portion goes straight east to 73E and a curve turns to the north and meets 73E about 200 feet north of the rectangular intersection. At a point east of highway 73E, almost directly east of where the curve on highway 58 enters 73E, stands Long's tourist camp and filling station. The paving on 73E is of brick, the edges of which are bordered by concrete headers. There is a concrete curb about six and one-half feet east of the east header and the space between is filled with broken rock. There are driveways leading from highway 73E into Long's station so that a car may leave the pavement, drive into the station and proceed ahead and again enter the highway. As the plaintiff came north he observed a building to the west, south of highway 58, and an automobile coming toward them on that highway. At the time

plaintiff was driving about fifteen miles per hour, as found by the jury in answer to a special question propounded in the wife's case. In the husband's case no special questions were submitted. The testimony warranted a finding that his speed was from ten to fifteen miles per hour. As plaintiff and his wife approached the northern intersection, the husband noticed an obstruction ten to twelve feet ahead, he applied the brakes and swerved to the left, but did not avoid it. It was a truck, the rear of which stood about forty-eight inches above the ground. The front of the Ford went under the truck sufficiently that the lower part of the truck struck along the hood of the car, and the impact drove the front of the Ford back, breaking the windshield and front of the car and pinning the wife in the seat. The husband immediately got out and, with the assistance of defendant Warnicke (also spelled Warnecke or Warecke or Warneke), removed the wife, who was unconscious. In a few minutes the wife was taken into a neighboring dwelling, Warnicke and the husband returned to the Ford and got some luggage and then returned to the dwelling, where shortly thereafter, in answer to an inquiry, Warnicke stated that he had stopped to fix his lights.

While contradicted by the testimony of Warnicke in certain particulars, it was shown that the truck was stopped in highway 73E so that the rear wheels were on the pavement and the rear end projected to the south and west so that the extreme corner of it was about six inches west of the middle of the highway, and that there were no rear lights of any kind showing, and that no flares had been placed to warn of the unlighted truck. The driver of the car approaching from the west heard the crash and drove on highway 58 to the north of the truck and stopped. He and his wife stated there were then no headlights burning on the truck. There was no dispute that defendant Thomas owned the truck and that defendant Warnicke was driving it for him in transporting live stock to Kansas City. Other testimony as to the accident and as to injuries received will not be set out here, but will be referred to in discussing appellant's contentions.

From a judgment in favor of plaintiff, defendants appeal, assigning twenty-two specifications of error, which are argued under twelve heads. These will be considered.

1. The first error complained of is that two medical witnesses were permitted to testify as to matters claimed not to be within the issues, and that the evidence was incompetent because based upon

mere conjecture and speculation. The petition alleged that the glass in the windshield and top of the car was crashed and knocked into plaintiff's face; that his right cheek was cut so his tongue could protrude through the opening caused by the cut; pieces of glass were driven into the maxillary bone, and there was an opening in said bone to the orbital cavity; that his facial nerves were cut and the right outer corner of his mouth damaged so that it causes his mouth to droop; that his jaw was fractured and his teeth were battered, jammed and broken so that even with all efforts dental science could furnish malocclusion resulted; that his face has been disfigured and his speech affected; that he had various cuts and bruises on his body. There was evidence to support all of the allegations.

The evidence complained of went first to the question asked medical witnesses whether there was danger of infection from the puncturing of the malar bone, and whether the malocclusion affected digestion, and second to the plaintiff's statements as to his humiliation on account of his disfigurement.

It is said by appellant that there was no pleading of special damages, and that as to the medical witnesses there was no basis in the evidence to support the inquiries as to infection and digestion, nor was humiliation on account of disfigurement pleaded, and *Railroad Co. v. Willey*, 57 Kan. 764, 48 Pac. 25, is cited in support. In that case there were allegations that plaintiff's leg and arm were broken and that he suffered wounds and gashes which confined him to his bed and caused great pain. Under such allegations he was permitted to prove impaired mental condition, and that was held to be error. In that opinion, however, it was said:

"A party is entitled to recover for all consequences which are the natural and probable result of injuries negligently inflicted upon him by another— that is, for those consequences which the common experience of men justify us in believing will result from an injury, the extent and character of which are known—without specially alleging them as grounds of recovery. Any result following an injury, but beyond the usual and natural consequences flowing therefrom, must be specially alleged, so as to apprise the opposing party of an intention to claim damages therefor. We may well conclude that, in consequence of the severe injuries which plaintiff received, he would suffer much physical pain, would be lamed, and disfigured in person; but it is not according to the common experience of men that such injuries result in mental infirmities." (p. 766.)

The rule there laid down justified the evidence complained of. There may have been a time when it was not generally known that

puncturing bones might cause infection, but it is not so to-day. The fact that plaintiff's jawbone had been broken, his teeth battered and broken, and that on healing there was malocclusion was shown, and certainly the fact that if he could not chew well he might have trouble with digestion was a natural and probable result. And, as we view the matter, the plaintiff's face having been disfigured and his speech having been impaired, to permit him to say that it embarrassed and humiliated him did not introduce an element not a natural result of his injury. On the contrary, it would seem that if one caused an injury to another which affected his appearance he could just as well assume that the disfigurement would humiliate and embarrass him as that the injuries would cause pain and suffering. In 17 C. J. 761 *et seq.* the rule is stated:

"As a general rule where a cause of action is complete a recovery may be had of prospective damages which it is reasonably certain will accrue. Future damages are not recoverable in cases in which successive actions may be maintained. Conversely, where no subsequent action may be maintained, all damages, present and future, may be recovered." (§ 92.)

"Where it is established that there will be future effects from an injury to the person, damages therefor may be awarded, and to authorize a recovery for such future effects it is not necessary that they be permanent in their nature. So where the injuries are of a permanent nature there may be a recovery for consequences which have not yet actually ensued. Under this rule plaintiff is entitled to recover for pain which he is reasonably certain to suffer in the future, or for future mental suffering which is a necessary consequence of the physical injury. Hence, future consequences which are reasonably to be expected to follow an injury may be given in evidence for the purpose of enhancing the damages to be awarded.

"As the rule is generally stated, it is necessary that there exist a reasonable certainty that the apprehended future consequences will ensue from the original injury. In some jurisdictions, however, it is held to be sufficient that the result shall be likely or reasonably probable. Future consequences are not to be considered where no proof of such consequences has been introduced in evidence. There can be no recovery of damages for future mental anguish which might be suffered by plaintiff from a contemplation of what merely might occur.

"While the evidence to authorize a recovery because of the future consequences of an injury to the person must establish such consequences with reasonable certainly, or reasonable probability, direct expert evidence is not, according to the general rule, regarded as essential, although it has been held that where there is nothing from which a layman can form any well-grounded opinion as to the permanency of the injury, or where the injury is purely subjective, expert evidence as to the consequences must be introduced.

"Where the evidence is conflicting, the question whether future consequences will ensue is one of fact for the jury." (§ 94.)

The evidence complained of here is of varying degree. Plaintiff testified his face had many glass slivers driven into it and they continued to come out from time to time after the accident. He also testified as to his eating. It was not claimed that at the time of the trial he had either an infection or that he was then suffering from indigestion. However, the malocclusion was permanent and digestive trouble, while not a necessary, was a very possible, result. So far as the disfigurement is concerned, it is permanent. It has not been made to appear that the error complained of was in any manner prejudicial to the appellant.

2. Did the court err in permitting the showing that Thomas was a contract carrier? The petition alleged that Thomas was a common carrier, and defendants saw fit to put the matter in issue by their answers.

Although it was for all practical purposes admitted that Thomas was a contract carrier, his lack of a frank admission caused argument about the manner in which it was proved that he was such a carrier. Appellant's principal complaint, however, is that it was permitted to be shown. At the time of the accident Laws 1931, chapter 244, was in effect. It applies to vehicles other than private passenger vehicles, and section 2 provides that every vehicle to which the act applies shall have a red light plainly visible 500 feet to the rear, a reflector at the rear so located as to be visible for at least 500 feet to the rear when opposed by headlights at night on an unlighted highway, that every such vehicle shall display lights—

"And a red light at the extreme right and left sides at the rear, visible under normal atmospheric conditions for at least 500 feet."

And further provides the hours when the lights should be kept in operation, and that no such vehicle shall proceed on the highway in event of failure of lights, and immediately on such failure the operator shall place flares or lights 500 feet to the front and rear of such vehicle.

Under Laws 1931, chapter 236, § 5, since amended in other particulars (R. S. 1933 Supp. 66-1,112), the public utilities commission was given power and authority to prescribe rules and regulations governing motor carriers. See, also, section 9 of the same act. By section 21 of the act it is provided that no certificate or license shall issue until the applicant shall have filed with and the same has been approved by the public service commission, a bond to ade-

quately protect the interests of the public for injuries to persons from the negligent operation of such carrier.

With these statutes in force, it seems pointless to argue that it was immaterial whether defendant Thomas was a contract carrier. If he were, there were certain legal obligations incumbent upon him that required him to do and observe things not required first, of a driver of a passenger vehicle, and second, of a driver of one's own truck for one's own purposes, *i. e.*, not a contract carrier, or other carrier obligated under the act.

3. Complaint is made that the court permitted evidence to be received concerning defendant Warnicke's statements as to why he stopped his truck, and especially his statement, made possibly one-half hour after the accident, that he stopped to fix his lights. Much is said that Warnicke's statements were not part of the *res gestæ* and are hearsay as to the defendant Thomas. The point need not be decided. The statements were certainly admissible against Warnicke. Although appellant requested ten instructions in the husband's case, and nine instructions in the wife's case, no one of them asked that the jury be advised as to the binding force and effect of the statement being limited to Warnicke.

*Sweet v. Savings Bank,* 73 Kan. 47, 84 Pac. 542, states the rule:

"Where two or more persons are defendants in the same action, and the plaintiff offers evidence competent as to one and incompetent as to another, and the latter offers an objection, which is overruled and the evidence admitted, and the court omits to limit by proper instructions the application of such evidence to the defendant against whom it properly applies, *held,* that the overruling of the objection was proper, and the omission to instruct as above stated cannot be deemed material error, when the objecting defendant does not request an instruction making such limitation." (Syl. ¶ 2.)

(See, also, 64 C. J. 134.) Under the circumstances there was no prejudicial error.

4. Complaint is made that the court committed error in permitting plaintiff's counsel to introduce in evidence the fact that defendant Thomas had liability insurance, and in refusing to discharge the jury on account thereof. The limits of space prevent setting out the detailed questions and answers complained of, but the situation may be summarized in this manner. When plaintiff was testifying in his own behalf on direct examination he told about going to see Thomas, that he looked at the truck and asked Thomas about his lights and about his being a common carrier, and that Thomas answered he had no light equipment on his truck because he was

not in sympathy with the law that required it, and that Thomas stated he was a licensed carrier. He was cross-examined concerning the lights and the condition of the truck. The question of insurance was not mentioned. Thomas took the stand in his own behalf and testified concerning the truck and its condition, and a direct question was asked him as to whether he had told Sponable he had no clearance lights and didn't intend to have any because he didn't believe in the law. Plaintiff objected to the leading question, and asked that the witness state the conversation. The court permitted Thomas to answer, "I did not." On cross-examination as to what was said, Thomas, among other things, said Sponable asked him about damages to the truck and he told him what damage had been done and that Sponable then said, "Whatever damage was done to the truck, I would be glad to take care of *because I carry insurance.*" (Italics ours.) Following that answer and some other answers, plaintiff's counsel asked as to the remainder of the conversation. The jury was excused and the matter was argued to the court, appellant urging that the matter of his being insured should not be inquired into, appellee answering that appellant had opened the matter and he could pursue it. The jury was returned, and many questions and objections followed, which need not be detailed further than in answer to one question witness answered, "Mr. Sponable asked me if I had insurance," and that thereafter witness was asked what, during the intermission, his attorneys had told him to say in answer to questions, and finally the witness stated that Sponable said if Thomas had insurance he was going to bring suit, otherwise not, and that he told Sponable he had insurance.

In *Van Pelt v. Richards Paint & Paper Co.,* 132 Kan. 581, 296 Pac. 737, it was held that the persistent injection into the case of the fact the defendant carried liability insurance indicated a lack of good faith in bringing the action and was reversible error. In that case each juror on *voir dire* was asked if he was a stockholder or agent of the particular company which carried the risk, which was followed in the evidence by inquiries whether a witness had given statements to anyone, and the answer was that he had to attorneys for defendant's insurance company, and a medical witness was asked who hired him to make his examination, knowing or suspecting the answer would be some representative of the insurance company. Plaintiff also testified defendant had told her they had plenty of

insurance and would take care of everything. In disposing of the case, this court said:

"Evidence that defendants had indemnity against loss by reason of personal injuries was foreign to any issue in the case, and being incompetent and of a kind that might result in prejudice, counsel should have been careful to keep out any mention of that fact in the trial. To persist in suggestion to the jury that the defendants would not have to pay any damages that they might allow, and that some one else in the case would discharge the judgment, cannot be regarded as other than misconduct. Such a collateral matter injected into the case and kept before the jury is recognized by the courts to be highly improper and to constitute reversible error. If the matter of insurance unexpectedly slips out in the case and is promptly withdrawn by counsel and the jury directed to disregard it, and where it is clear that no prejudice was intended or could have resulted, a reversal does not necessarily follow. (*Bagnall v. Hunt*, 131 Kan. 805, 293 Pac. 733, and cases cited.)" (p. 587.)

In *Holloway v. Telfer*, 136 Kan. 80, 12 P. 2d 826, it was held that it is gross misconduct for plaintiff's attorney to inject into the trial of a personal-injury case the inference that defendant is protected by insurance. Reference was made to the Van Pelt case with approval. The court's instructions admonished the jury the fact of insurance should have no influence on the verdict. The verdict was for a less sum than the evidence warranted and was not claimed to be excessive, and it was held the error was not prejudicial, the defendant's negligence having been clearly established. Other cases from other jurisdictions are cited, but need not be analyzed. We adhere to the rule laid down in our cases, but the question arises as to whether it is applicable in its full force to the situation that exists here. It may be said there was no persistent injection in the trial of the fact that defendant Thomas carried insurance. It is also observed that the question of insurance was not injected into the case in any way until Thomas, in detailing his conversation with plaintiff, stated plaintiff said he carried insurance. While this statement was made on cross-examination, it bears some indication that Thomas desired the jury to know plaintiff was insured, even though his counsel wanted plaintiff to carefully refrain from showing defendant Thomas had insurance. The question of insurance having been brought into the case by the defendant Thomas, he is in poor position to complain that plaintiff insisted on the entire conversation with reference to insurance being shown. It would seem under usual rules of evidence that a part of a conversation having been referred to or shown, the remainder is admissible. As bearing on

this point, see *State, ex rel., v. Creager,* 97 Kan. 334, 155 Pac. 29; *Clogston v. White,* 127 Kan. 399, 273 Pac. 458, and 3 Wigmore on Evidence, § 2099. Further, the defendant Thomas was a contract carrier, and under the statute, to which reference has been made, he was required to carry insurance. Ordinarily it is not error to prove a duty imposed by law, and the proof showed no more than the jury was presumed to know. (See 4 C. J. 980.) We are satisfied that, under the circumstances, there was no prejudicial error.

5. Was the plaintiff guilty of contributory negligence? The argument is based on the proposition that he was not driving at a rate of speed that would enable him to stop within the distance he could see objects ahead of him. The evidence showed that the plaintiff's car was equipped with standard lights, which were in operation, and that the beam or ray of light showed forward focusing on the ground about thirty feet ahead of the car, and that the lights were about thirty-six inches above the ground; that the truck was unpainted and a dark, drab color; that it had no lights, either tail or other lights at the rear, nor were there any flares or other lights to warn of its location, and that the lower portion of the back end of the truck was about forty-seven or· forty-eight inches above the ground. The truck was on the pavement with the rear thereof slightly over on the left-hand side of the center of the highway. The plaintiff's speed was about fifteen miles per hour; the highway was slick from sleet and snow. The plaintiff stated he did not see the truck until he was about fifteen feet from it. Other testimony might be detailed, but the above shows the situation. Appellants contend that at the speed plaintiff was driving he should have and could have stopped after seeing the truck, and in any event it was negligence for him to drive at such a rate of speed he could not stop short of any obstruction within the range of his vision, citing in support *Giles v. Ternes,* 93 Kan. 140, 143 Pac. 491; *Fisher v. O'Brien,* 99 Kan. 621, 162 Pac. 317; *Howard v. Zimmerman,* 120 Kan. 77, 242 Pac. 131; *Rhoades v. Atchison T. & S. F. Rly. Co.,* 121 Kan. 324, 246 Pac. 994; *O'Connell v. Lusk,* 122 Kan. 186, 250 Pac. 1059; *Haines v. Carroll,* 126 Kan. 408, 267 Pac. 986; *Tuer v. Wayland,* 129 Kan. 458, 283 Pac. 661, and cases from other jurisdictions. We shall not stop to analyze these cases, for we are satisfied with the manner in which they were decided. If appellant is entitled to judgment on the ground that the plaintiff was guilty of contributory negligence, it must be as a matter of law, for the jury's verdict

acquits the plaintiff of contributory negligence as a matter of fact. Ordinarily the question is one of fact. In *Keir v. Trager,* 134 Kan. 505, 507, 7 P. 2d 49, it was said:

"The general rule is that the defense of contributory negligence is a question of fact to be determined by the jury. It is for the jury to determine, considering the special circumstances and surroundings of each particular case, whether the conduct of the parties was such às would be expected of a reasonable, prudent person. (*Insurance Co. v. Railroad Co.,* 110 Kan. 4, 202 Pac. 582.) In considering a demurrer all of the testimony favorable to the plaintiff must be accepted as true. The court does not weigh testimony when considering a demurrer, and if the facts relating to contributory negligence are such that reasonable minds might reach different conclusions thereon, it is a question for the jury to determine. (*Zumbrum v. City of Osawatomie,* 130 Kan. 719, 288 Pac. 584; *Lilly v. Wichita Railroad & Light Co.,* 127 Kan. 527, 274 Pac. 205.)" (p. 507.)

To determine the question as a matter of law, therefore, requires a consideration of the evidence favorable to plaintiff, and that evidence is that plaintiff, with car properly equipped as to lights and brakes and able to see forward some thirty feet or more, did not see defendant's dark, drab, unpainted, unlighted truck, the body of which stood high enough off the ground that it was above the range of plaintiff's lights. In a case involving the same issue as here, this court said in *McCoy v. Pittsburg Boiler and Machine Co.,* 124 Kan. 414, 417, 261 Pac. 30:

"The purpose of a highway is for passage, travel, traffic, transportation, communication. The automobile is a vehicle used for travel, traffic, transportation and communication and the statute is regulatory of such use. Highways are not maintained for the purpose of providing places for storage of automobiles. . . . The subject of regulation by statute was movement of automobiles on highways, in the sense indicated. A red light at the rear end visible at night was deemed essential. The purpose was to provide a danger signal to overtaking traffic. The warning is more necessary when the automobile is at rest than when it is in motion, . . ." (pp. 418, 419.)

The plaintiffs in proceeding along the highway had a right to believe that it was safe and that there were no hidden, undisclosed defects such as an unlighted truck standing in the path of travel. While the facts are not the same, in theory at least, this case is controlled by the reasoning of *Barzen v. Kepler,* 125 Kan. 648, 266 Pac. 69, and *Deardorf v. Shell Petroleum Corp.,* 136 Kan. 95, 12 P. 2d 1103. Had the truck in question been painted some contrasting color, or had the body of it been low enough to be within the range

of the headlights of plaintiff's car, a different situation might be before us, but as we view the matter the question of whether there was contributory negligence on the part of plaintiff in not seeing the truck, under the evidence, was not a question of law but was for the jury. It is argued plaintiff could have stopped the car after he saw the truck. An automobile salesman and mechanic, who admitted on cross-examination it was his first experience as such, was examined as an expert, and upon being asked a hypothetical question involving the car, equipment, road conditions, weather conditions, etc., testified the car could be stopped, if going at a rate of speed of from ten to fifteen miles per hour, within five or six feet, and, if going less than ten miles per hour, within two or three feet. On cross-examination he stated that in driving a car the driver would not be supposed to ride with his foot on the brake, and that going at ten miles an hour the time required to stop would be so short it is hard to judge, "I would say two or three seconds. Going fifteen miles an hour, it would possibly take another second; something like three or four seconds." A computation shows a car going ten miles per hour moves about fourteen and one-half feet a second and at fifteen miles per hour about twenty-two feet a second. Under the witness' testimony, assuming the car was going ten miles per hour, it would in the two seconds necessary to get the brake in action go about twenty-nine feet and the brake would then stop it in about three feet more, or it would go forward about thirty-two feet from the time the driver saw the obstruction until he could stop. If the car was going fifteen miles per hour it would be at least fifty feet. As the plaintiff did not see the truck until he was about fifteen feet from it, obviously, under the expert's testimony, he did not have time to stop.

6. Appellants complain that the court erred in instructing the jury that it was admitted Thomas was a contract carrier. It is true, as has been noted, he denied it in his answer, but he admitted it on the stand, and in the briefs we fail to find where it is even now denied. There was no error in so instructing the jury.

7. Error is claimed in the giving of an instruction in which the jury was advised that a contract carrier was required by law to maintain lights in accordance with the statute to which reference has been made, and that if the jury found from a preponderance of the evidence that defendant's truck was on the highway at the time

and place charged, and placed there by defendant Warnicke, and that it was without lights as required by law, such constituted *prima facie* evidence of negligence on the part of defendants. The complaint is based in part on the ground there is no statutory requirement as to such lights, and that the instruction must have been based on a regulation of the public service commission. The contrary has been demonstrated. Neither is the instruction open to the objection that it makes the carrier an insurer. Appellant's argument ignores that part of the instruction with reference to the truck being placed there by Warnicke, and that it is not conclusive, but only *prima facie* evidence of negligence. In another instruction the court advised the jury that *" 'prima facie,'* as used in these instructions, means evidence sufficient in law to raise a presumption of fact, or to establish the fact in question, unless rebutted." Had the instruction been subject to the complaint urged against it, the giving of it would hardly have been prejudicial in view of Warnicke's statement: "I did not look at the tail lights and rear lights at any time after I left Pleasanton. I only noticed the left-hand front clearance light on the rack at Louisburg." Louisburg is over twenty-five miles south and Pleasanton over fifty-five miles south of the scene of the accident. Under the decision in *McCoy v. Pittsburg Boiler and Machine Co.,* 124 Kan. 414, 261 Pac. 30, the instruction was correct.

8. Complaint is made of instruction No. 10 in which the court advised the jury that if it found by a preponderance of the evidence that defendants' car was stopped or parked on the paved portion of the highway in such position as to obstruct the line of traffic thereon, and if it should find that by reason thereof plaintiff received the injury and damage, to which he did not negligently contribute, then such circumstances constituted *prima facie* negligence on the part of defendants. It is said that this told the jury the defendants were *prima facie* negligent merely because the truck was stopped or parked on the paved portion in such position as to obstruct the line of traffic thereon, and that this is not the law; that the jury would be justified in finding for the plaintiff even though the jury found the truck had lights on it, and that it ignored the question of lights. All of the instructions cannot be included in one instruction. The eighth instruction dealt fully with the question of lights, and the eleventh advised the jury that the collision of the two vehicles, standing alone, did not prove or tend to prove defendants' negligence,

and that negligence, standing alone, did not create liability, but that it must be proved that such negligence, if any, was the proximate cause of the injury and damage. Construing the instructions as a whole, there was no error in the tenth instruction. (See *Hunter v. Greer*, 137 Kan. 772, 22 P. 2d 489.)

9, 10 and 11. All of these complaints pertain to the court's refusal to give requested instructions. There is no need to set out the requested instructions. A comparison of them with those given by the court shows that the substance of the requested instructions was included in those given by the court, except as to requested instruction No. 10 under which the jury would have been instructed in substance that if they believed the truck was lighted with a tail light and two red lights on the rear when the truck left Pleasanton, and thereafter the lights went out, these facts, if found, did not make defendant negligent in respect to the claim there were no red signal lights on the rear of the truck, unless the jury further found that the driver of the truck knew the lights were out, if they were out, or in the exercise of reasonable and ordinary care should have known they were out. The instruction ignored the driver's own statement that he did not look at the lights after leaving Pleasanton, omitted the statutory requirement that the truck should have had a reflector, and was properly refused. The matter was properly covered by the court's instruction No. 8 to which reference has heretofore been made.

12. The last complaint is that the verdict is excessive and the result of bias and prejudice. The amount of the verdict was $5,800. In considering the question of whether the verdict is excessive, we must give consideration to the plaintiff's testimony as to his injuries, and indeed, there is no dispute with respect to what happened to him—rather the complaint is the jury was permitted to hear the evidence complained of as being speculative and conjectural, and the statement with respect to insurance, and that had it all been excluded the judgment would have been for a lesser amount.

The injuries sustained have been hereinbefore detailed in part and will not be repeated. The matter of speculative and conjectural damages and the reference to insurance have been discussed. The jury decided the issue on proper testimony. No special questions were submitted, and we do not know how much was allowed for the

cut in the face, the fractured bones, the broken teeth, the pain and suffering, the malocclusion, and the disfigurement of plaintiff's face.

In *Hardwick v. Railways Co.*, 114 Kan. 843, 845, 220 Pac. 1043, is the following:

"Error based on an excessive verdict and judgment is seldom an easy question for an appellate court to solve, and it is peculiarly difficult where the sum allowed is for pain and suffering. Of course rules for dealing with excessive verdicts are not altogether wanting; if, on reading the record, the conscience of the court is shocked at the verdict, a remittitur or reversal is ordered; but there is no uniform yardstick, no hard and fast rule, by which the excessiveness of a verdict can be measured and determined as in ordinary mathematical calculations. In this case, when we give full credence to the plaintiff's testimony touching his pain and suffering, as we are bound to do because the jury gave it such credence, the verdict and judgment are not so large as to produce such psychological reaction on the judicial conscience as to impel it to order a reduction or reversal." (p. 845.)

And the rule there made was approved in the recent case of *Carlisle v. Union Public Ser. Co.*, 137 Kan. 636, 643, 21 P. 2d 395. It is difficult for an appellate court to review a claim that the verdict is excessive. (*Ellis v. Kansas City Public Service Co.*, 131 Kan. 555, 559-561, 292 Pac. 939; *Shrout v. Bird*, 135 Kan. 218, 9 Pac. 2d 673; *Carter v. McNally*, 137 Kan. 313, 20 P. 2d 491.)

The trial court heard all the testimony and had the opportunity to see plaintiff and observe the effect of the injuries which he sustained. It approved the verdict. We are not prepared to say that, under the facts, the amount allowed shocks the judicial conscience and requires either remittitur or new trial.

The judgment is affirmed.