No. 40,443

Nettie Sharp, *Appellee*, v. The Pittsburg Coca Cola Bottling Company, a corporation, *Appellant*.

(308 P. 2d 150)

Opinion filed March 9, 1957.

*R. L. Letton*, of Pittsburg, argued the cause, and *P. E. Nulton*, of Pittsburg, was with him on the briefs for the appellant.

*Perry Owsley*, of Pittsburg, argued the cause, and *Sylvan Bruner*, of Pittsburg, was with him on the briefs for the appellee.

The opinion of the court was delivered by

Robb, J.: This was an action based on breach of an implied warranty to recover damages for personal injuries sustained by plaintiff as a result of consuming a swallow from a bottle of car-

bonated beverage containing foreign substances. Plaintiff recovered and defendant appeals.

On April 26, 1954, plaintiff, a woman sixty-eight years of age, while cleaning the offices of a doctor in the Globe Building at Pittsburg, purchased a bottle of Coca Cola (which had been bottled in defendant's plant) from a dispensing machine that was owned, serviced, and operated by defendant. Plaintiff took a big swallow of the beverage, felt a lump in her throat, became nauseated, commenced vomiting and continued to do so until there was an appearance of blood. Plaintiff had previously been a victim of high blood pressure and gall bladder attacks but had not had any attacks for over a year prior to the incident here involved. She was hospitalized for a period of eight days and was then released. She was unable to return to her work for about two weeks. Her gall bladder and high blood pressure ailments were "stirred up" and she could not eat what she should. This caused her to be sickly and weak and this condition continued up to the time of trial, which was almost two years after she partook of the carbonated beverage.

Persons who saw plaintiff at the time she swallowed the beverage testified strings of tobacco and nicotine were apparent in the remaining portion of the contents of the bottle. An analysis of those contents by an expert showed they contained strands of tobacco and char from a cigarette in addition to nicotine. The analysis further showed that the full eight ounce bottle of beverage had contained 0.0207 grams of nicotine. The expert stated this approximated the nicotine content of one cigarette which would cause some people to become "pretty sick."

It is not disputed that plaintiff is entitled to recover but her chosen theory of breach of an implied warranty is challenged. We agree with defendant's statement that the questions of breach of an implied warranty and the doctrine of *res ipsa loquitur* were thoroughly discussed in *Nichols v. Nold*, 174 Kan. 613, 258 P. 2d 317, but in our case we are concerned only with implied warranty. In the Nichols case there were multiple defendants who had handled a bottle of carbonated beverage from the time it left the bottling plant until its ultimate arrival into the possession of the plaintiff-consumer. There the bottle exploded due either to a defect in the bottle or excessive carbonation of the contents. In the Nichols case the following paragraph from the syllabus in *Parks v. Pie Co.*, 93 Kan. 334, 144 Pac. 202, was quoted,

" 'A dealer who sells human food for immediate consumption does so under an implied representation or guaranty that it is wholesome for the purpose for which it is sold.' " (p. 629.)

Let us pause to compare our case with the Nichols case. There it was a bottle of carbonated beverage and here it is the same. Such cool and refreshing carbonated beverages are bottled not only for human consumption, but also for *immediate* consumption, which fact is so advertised, and truthfully so. That was the reason plaintiff here purchased the bottle of beverage.

Returning to the Nichols case, at page 630 we find the court also quoted from the syllabus in *Swengel v. F. & E. Wholesale Grocery Co.*, 147 Kan. 555, 77 P. 2d 930, as follows:

" '2. Where articles of food for human consumption are manufactured or packaged by a manufacturer or packer, and by a series of transactions reach a retail dealer who sells to the consumer, the manufacturer or packer, each intermediate dealer and the retail seller impliedly warrant that such articles of food are wholesome and fit for immediate human consumption.' " (page 630.)

Pausing again for comparison of the Nichols case with our present one, here the manufacturer and bottler took its product to a public office building and placed the bottles in a coin-operated dispensing machine which was owned, serviced and operated by the defendant and from which any member of the public including plaintiff, could, upon depositing a coin, receive a cool, refreshing, and flavorful drink. There was also a convenient contrivance on the dispenser which served as an aid to the removal of the bottle cap so as to expedite the immediate consumption. These facts certainly present a more clearcut situation than those in the Nichols case and we think they justify the application of the rule set out therein.

Defendant requested that the jury inspect its plant where the beverage was bottled. This request was denied by the trial court and is assigned as error in this appeal. It should be noted that the manager of the defendant's bottling plant testified extensively as to how the bottles were prepared and handled during the operation of cleaning, filling and capping them.

G. S. 1949, 60-2910 governs this situation and provides:

"Whenever in the opinion of the court it is proper for the jury to have a view of . . . property . . . it may order them to be conducted in a body . . . to the place. . . ."

Thus the trial court properly exercised and did not abuse its

discretion in refusing the inspection of the premises. This familiar rule is set out in many of our Kansas cases. One of them is *Williams v. Kansas City Public Ser. Co.*, 147 Kan. 537, 78 P. 2d 41.

The next question is whether the verdict of $7,179.55 is excessive and whether it is supported by the evidence. The salient part of the verdict attacked was that of permanent injuries in the amount of $5,000 shown by the jury's answer to special question No. 6 D. which answer depended on and was the result of the following instruction, also objected to by defendant:

". . . and in arriving at the amount (of damages) you may consider the age, condition of health before and after the alleged injuries, plaintiff's physical and mental pain and suffering, including the *future pain and suffering* incident to plaintiff's physical injuries, whether said injuries are temporary or permanent . . . and *future loss of earnings.* . . ."

The summarized testimony has already been set out regarding the recurrence of plaintiff's gall bladder trouble, high blood pressure and inability to eat at a time two years subsequent to the drinking of the deleterious beverage. Considering this evidence for the purpose of applying thereto the rules of law relied on by the defendant, we are unable to say that the verdict is so excessive as to shock the conscience of the court thereby compelling a reduction in the verdict or the granting of a new trial. *Hardwick v. Railways Co.*, 114 Kan. 843, 220 Pac. 1043.)

Defendant relies on *Leinbach v. Pickwick Greyhound Lines*, 135 Kan. 40, 56, 57, 10 P. 2d 33, where the jury not only allowed maximum amounts but added on extra amounts so as to portray passion and prejudice in an effort "to plunder the treasury of a corporation." In our case the plaintiff had asked a total of $10,000 and it cannot be found anywhere in the record that this jury was endeavoring by its verdict to "plunder the treasury of a corporation." (p. 56.) The Leinbach case repeated with approval the rule stated in the Hardwick case, *supra*. Defendant also cites *Young v. Kansas City Public Service Co.*, 156 Kan. 624, 135 P. 2d 551, which involved an excessive verdict wherein a new trial was to be granted unless the plaintiff accepted a remittitur. The court there quoted with approval a statement from *Union Pacific Rly. Co. v. Milliken*, 8 Kan. 647, as follows:

" 'No verdict is right which more than compensates; none which fails to compensate.' " (p. 630.)

Defendant also cites *Taylor v. F. W. Woolworth Co.*, 146 Kan. 841, 73 P. 2d 1102, wherein the trial court found passion and preju-

dice on the part of a jury in rendering its verdict and ordered a remittitur to be accepted by plaintiff or in the alternative a new trial would be granted. This court held in the Taylor case that after a showing of passion and prejudice the trial court should have granted a new trial. In our case the trial court not only found no passion or prejudice but evidenced its approval of the verdict by rendering judgment thereon. Had the trial court been dissatisfied with the verdict because it was based on passion and prejudice, it had the duty to set it aside and grant a new trial. (*Drumm v. Cessnum,* 58 Kan. 331, 49 Pac. 78; *Pugh v. City of Topeka,* 151 Kan. 327, 99 P. 2d 862.) We are unable to say that the record before us displays facts and circumstances requiring the application of this rule of law set out in the cases relied on by defendant.

The next question raised by defendant was that the instructions above set out in part and submission of special question No. 6 D. pertaining to permanent injuries were erroneous because of lack of evidence to justify the submission thereof to the jury. We think there was evidence to justify and even to compel the giving of such an instruction and the asking of the special question. We should further add that the plaintiff's unrefuted testimony showed that what she experienced as a result of taking the swallow from the contents of the bottle was just like her gall bladder attacks had been. We cannot say that the court had no right to consider this evidence in its instructions, or that the jury had no right to consider it in making its findings and rendering its verdict. (*Knoblock v. Morris,* 169 Kan. 540, 220 P. 2d 171.) Plaintiff here could not be presumed to recover instantaneously from her ailments suffered for a period of almost two years—the time between the purchase of the beverage and the time of trial. In *Carter v. McNally,* 137 Kan. 313, 316, 20 P. 2d 491, it was said it could not be presumed that a plaintiff would make an instantaneous recovery from ailments the moment a jury retired to consider a verdict. In the Carter case the question on the instruction apparently was not raised in the trial court. However, in our case even though this was raised below, can we say that the evidence warranted the trial court's submission of the instruction and special question? We certainly think the evidence did so warrant.

The authorities cited by defendant on the point that where an instruction is not supported by the evidence it is error to submit it to the jury involve facts and circumstances which distinguish

them from the case before us and in addition they are inapplicable because there was no evidence in those cases where the instruction was stricken out while in the case at bar there was evidence which justified the submitting of the instruction.

Defendant next complains of the refusal by the trial court to give its requested instructions No. 6 and No. 7. We will not set them out herein since we believe the trial court's instructions fairly and completely covered the issues and evidence thereon involved in the lawsuit as well as the matters set out in these particular requested instructions. (*Schumock v. Meerian,* 175 Kan. 8, 259 P. 2d 173.)

The special findings of the jury were supported by the evidence and those findings in turn supported and were consistent with the general verdict as we see it from the record before us. We are, therefore, compelled to hold that the verdict was supported by the evidence. The parties were afforded a fair trial and there was no apparent error.

The judgment is affirmed.

PRICE, J., dissenting: No one questions the right of plaintiff to be compensated adequately for the damage sustained, but under the evidence in this case it is my opinion the verdict is so grossly excessive as to indicate clearly that it was rendered under the influence of passion and prejudice, thus entitling defendant to a new trial.