L. H. SHEPPARD, *Appellee*, v. THE WICHITA ICE AND COLD STORAGE COMPANY, *Appellant*.

No. 16,538.

. SYLLABUS BY THE COURT.

1. PRACTICE, SUPREME COURT—*Verdict and Evidence—Judicial Notice—Physical Facts Demonstrating that Evidence is False.* Where there is some evidence tending to support a verdict, to justify an appellate court in overturning it on the ground that it is contradicted by the settled and unquestioned laws of nature or by some established principle of mathematics, mechanics, physics or the like, the undisputed physical facts must demonstrate beyond any reasonable doubt that the evidence is false and that the verdict is without support in fact or law.

2. PERSONAL INJURIES—*Verdict and Evidence.* .The evidence in this case examined, and *held*, that the physical facts are not shown to be such as to authorize the court to say that the story told by the plaintiff's witnesses is false or untrue.

Appeal from Sedgwick district court; THOMAS C. WILSON, judge. Opinion filed May 7, 1910. Affirmed.

· *W. E. Stanley, R. R. Vermilion*, and *Earle W. Evans*, for the appellant.

*C. T. Ferguson*, for the appellee.

The opinion of the court was delivered by

PORTER, J.: The plaintiff sued to recover damages. for injuries caused by his falling into an open tank of hot water while in the defendant's employ. The jury awarded him damages in the sum of $2000. The defendant appeals.

The defense was contributory negligence. The plaintiff had been in the employ of the defendant five and one-half days. He had only been at work in and about the room where the accident occurred half a day. The room was undergoing repairs, and the floor was being taken up and the plaintiff was engaged in carrying out the lumber. The defendant sought to show that the room was so light that the plaintiff should have seen the tank before he stepped into it. The evidence shows that there were two skylights in the roof over the room, each six feet long and three feet wide; that there were several doors and windows, including two windows in the north about eighteen or twenty feet away, and an opening in the north wall seven feet by four feet, distant about twelve feet from the tank. In addition, the floor between the opening and the tank had been taken up. The plaintiff testified that at the time of the accident he was looking on the floor for a pinch bar, and was feeling along with one hand trying to find it; that it was so dark where he was that he did not see the tank and walked into it. He also testified that a pile of lumber on the floor obstructed to some extent the light from a door back of him, and that the skylights were obscured by dirt and smoke. He was corroborated by a witness who was present and testified that it was dark near the tank, from which there was a weak vapor of steam escaping at the time. There was also testimony that another tank, called the "brine tank," had been raised about four feet from the floor on account of the repairs which were being made, and that this tended to shut off a part at least of the light from the windows and openings.

There is only one proposition argued in the brief, which is, that the testimony of the plaintiff's witnesses is not to be credited or given any weight whatever because of the physical facts; that the size of the room and the number of doors and openings from which light was admitted being conceded, it is physically impossible that the testimony of the plaintiff's witnesses can be true.

It is said in the defendant's brief that "before this verdict can be sustained this court must feel satisfied that, notwithstanding all the windows and openings, it was so dark about the vat that the plaintiff could not see his danger." We do not so understand the law or the functions and authority of the court. We may have grave doubts whether it was so dark about the vat as to prevent the plaintiff from seeing his danger. The jury have said that it was. The question for us to determine is whether there is legal evidence in the record to support this finding. The defendant urges that in order to sustain the verdict the court would be required to ignore the evidence of its own senses and its own experience in like matters. The question is squarely presented, therefore, whether the physical facts in this case are such that we can say there is no legal evidence to support the verdict. A similar contention was raised in the "wool case" (*Insurance Office v. Woolen-mill Co.*, 72 Kan. 41), where the court declined to disturb the verdict of a jury far more at variance with the undisputed facts and well-known laws of nature than is the verdict here. It was urged again, but unsuccessfully, upon another state of facts and circumstances in the recent case of *Smith v. Railway Co.*, ante, p. 136.

Appellate courts do not hesitate to reverse a judgment where a principle of law judicially known to the court requires it, notwithstanding the trial court may not have taken judicial notice thereof. It is equally clear that appellate courts will take judicial notice of the unquestioned laws of nature, of the laws of mathe-

.matics and of physics; and where the trial court has refused to recognize them, and has approved a verdict supported by some evidence, but so far at variance with the undisputed physical facts as to demonstrate that the evidence is false and the verdict unjust, it becomes the duty of the appellate court to reverse the judgment. Speaking of the duty of an appellate court in this respect, Mr. Elliott, in his work on Evidence, says:

"Even though it may not be authorized to weigh evidence and pass upon the facts, it may, and should, so use its judicial knowledge as to bring about justice. Thus, there are often undisputed physical facts clearly shown in evidence, and by applying to them a well-known law of nature, of mathematics, or the like, it is demonstrated beyond controversy that the verdict or finding is based upon what is untrue and can not be true. In such cases it is very generally held that the appellate court should take judicial notice of the law of nature or mathematics or quality of matter, or whatever it may be that rules the case, and apply it as the trial court should have done." (1 Ell. Ev. § 39.)

This principle was recognized by the court in *Young v. Railway Co.*, 57 Kan. 144, where the plaintiff, who was injured at a railroad crossing, testified that when within a distance of a hundred feet from the crossing she looked and listened for the train, and then stopped again and looked and listened, but did not see the train until she was struck. It was held that her testimony was self-contradictory, because if she had looked she must have seen the train, for it was in plain view. Again, upon the same principle, in *Railroad Co. v. Holland*, 60 Kan. 209, a judgment for the plaintiff was reversed with directions to enter judgment for the defendant. That was a crossing case, and the plaintiff testified that she looked and listened but did not see the train. The jury made a finding that she was not negligent. The finding was held to be "little less than absurd" (p. 212), because her evidence was in plain contradiction of the physical facts. The same doctrine

has frequently been recognized and followed by other courts. (*Lake Erie and Western Railroad Company v. Stick,* 143 Ind. 449; *Cleveland, etc., R. Co. v. Berry,* 152 Ind. 607; *Bornscheuer v. Traction Co.,* 198 Pa. St. 332; *Payne v. C. & A. R. R. Co.,* 136 Mo. 562; *Hudson v. R. W. & O. R. R. Co.,* 145 N. Y. 408; *Medcalf v. St. Paul City Ry. Co.,* 82 Minn. 18; *Hunter v. N. Y., O. & W. R. R. Co.,* 116 N. Y. 615.)

In the case last cited the plaintiff, who was a brakeman, was injured by striking his head against an arch of a tunnel. The car upon which he was riding was identified and its height above the rails and the height of the arch in the tunnel established by the plaintiff's evidence, so that it was undisputed that the space between the top of the car and the arch of the tunnel was four feet and seven inches. He testified that at the time he received the injury he was sitting down on the top of the box car. There was a cut or gash on his forehead, and it was undisputed that in order to have received the blow at that point his head must have been at least four feet eight inches above the top of the car. The trial judge submitted to the jury the question of the possibility of the accident happening in this way, saying: "If the plaintiff was sitting down, it is for you to say whether his head would reach to that height." (Page 621.) In the opinion it was said:

"Courts are not bound to take judicial notice of matters of fact. Whether they will do so or not depends on the nature of the subject, the issue involved and the apparent justice of the case.

"The rule that permits a court to do so is of .practical value in the law of appeal, where the evidence is clearly insufficient to support the judgment. In such case judicial notice may be taken of facts which are a part of the general knowledge of the country, and which are generally known and have been duly authenticated in repositories of facts open to all, and especially so of facts of official, scientific or historical character." (Page 621.)

There was no evidence showing the height of the

33—82 KAN.

plaintiff, but the court took judicial notice that the average height of man is less than six feet, that the average length of the body from the lower end of the spine to the top of the head is less than thirty-six inches, and came to the conclusion that a man whose forehead would be four feet seven inches above the seat upon which he was sitting must be at least nine feet high; and, since history affords no instance of man attaining such height, the court took judicial notice of the fact that a man could not strike his head under those circumstances, and reversed the judgment.

In the case at bar the undisputed physical conditions surrounding the plaintiff at the time he received his injuries furnished a strong argument against the credibility of his testimony, but this is as far as the record authorizes us to go. Where there is some evidence tending to support a verdict, to justify an appellate court in overturning it on the ground that it is contradicted by the settled and unquestioned laws of nature or by some established principle of mathematics, mechanics, physics or the like, the undisputed physical facts must demonstrate beyond any reasonable doubt that the evidence is false and that the verdict is without support in fact or law. To justify such a conclusion in this case would require information on a number of matters of more or less importance concerning which the record is silent. For instance, we have information as to the number of windows, doors and openings, and their size, but the dimensions of the room are not stated, although the abstract contains a blue print from which, if it be drawn to a scale, we may assume that the building was thirty-two feet square. There are no directions marked on the plat, but, assuming that the top of the map is north, the ice room, which is sixteen feet square, is in the northeast corner of the building. The room in which the accident occurred is sixteen feet east and west by thirty-two feet north and south, with an "L" extension on the south

and east sixteen feet square.  There are no windows in the south, one window and one door on the west, and two doors on the east side of the "L" extension.  In that part of the room where the dip tank appears to be located the openings are in the north, and consist of two windows and an opening in the wall seven feet by four feet.  The plat shows four tanks in addition to the one in which the plaintiff was injured, or two tanks extending across the room; it is impossible to tell which.  Nor is it possible to tell from the plat either the location or dimensions of the brine tank, which was raised up about four feet and which the plaintiff claimed obstructed the light.  It is stated in the brief that this tank is east of the ice room, with a passage between them, but if we are correct in our assumption as to the directions on the map it would be a physical impossibility for it to be located east of the ice room.  Again, we know from the record that the accident occurred just after the noon hour, January 17, but whether it was a bright, clear day or a dark, gloomy one we are not advised.  In answer to special questions, the jury found that the doors, windows, skylights and other openings in the room where the hot water vat was located did not admit sufficient light to enable the plaintiff to see it.  The vat itself appears to have been in the main room, immediately north of the angle formed by the southwest corner of the ice room.  The vat was level with the floor; it was three feet long and twenty inches wide, and there was a slight mist or vapor of steam rising from it.  It is reasonable to suppose that the brine tank, which was raised up about four feet, cast some shadow on the floor, just as a table, desk or any solid article of furniture will do in an ordinary room.  With no information as to the size or dimensions of this tank, or its location with respect to any particular door or window, we are unable to say that the story told by the plaintiff's witnesses is either improbable or untrue.

The judgment is therefore affirmed.