No. 30,638.

D. F. Marley, *Appellee*, v. The City of Arkansas City, *Appellant*.

(11 P. 2d 704.)

Opinion filed June 4, 1932.

Tom Pringle, city attorney, *H. V. Howard*, of Arkansas City, *James A. McDermott* and *Richard B. McDermott*, both of Winfield, for the appellant.

*W. L. Cunningham, D. Arthur Walker, Fred G. Leach* and *Wm. E. Cunningham*, all of Arkansas City, for the appellee.

The opinion of the court was delivered by

Johnston, C. J.: D. F. Marley brought this action to recover damages from Arkansas City for personal injuries suffered by him arising from a defect in a sidewalk of a street of that city. A verdict of the jury fixed the amount of his recovery at $4,500, which the court approved, and judgment for that sum was rendered.

Defendant appeals upon two grounds only. First, that it was a physical impossibility for the plaintiff to have been injured in the

manner claimed; second, that improper and prejudicial argument was made by plaintiff's attorney. It appears that a cast-iron plate had been laid over a gutter near the intersection of Adams and Summit streets, in the business part of the city. The plate was five feet long and three and one-half feet wide, and the traffic across the plate went north and south. The plate rested on a shoulder cut on the curb line at the south, and upon a concrete header about four inches wide on the north. It had a play of one inch and was held in place by its own weight. The northwest corner of the iron plate had been broken off a considerable time before the accident, leaving a triangular hole about fourteen inches long east and west, and about four inches wide on the west end of the opening. The break was uneven and tapered so that it was in shape a triangle. The plaintiff, who was about 230 pounds in weight, was walking north in the nighttime and according to the evidence his right foot or some part of it dropped into or was caught in the hole, causing him to fall, dislocating his foot, twisting his leg and lacerating the tendons thereof. He was carried to a hospital, where the dislocation was reduced and his foot placed in a plaster cast, in which it remained for several weeks. The nature and extent of the injury, however, is not a matter of controversy here, but it is contended that as the plaintiff's foot was four inches wide and eleven inches long, it was impossible for his foot to have gone into the opening as described by the plaintiff. It is argued that as he was walking on the west side of the street as he approached the plate from the south, the broken corner of it was on the left-hand side and that he had stepped into this hole with his right foot, which was at the north and west edges of the plate, and further that the open space was not sufficiently large to admit of the entrance of his foot. He testified that his foot went into or caught in the opening, throwing him on the pavement and twisting the foot and leg.

Defendant insists that it was physically impossible for the accident to have happened as stated by plaintiff, and that the evidence does not disclose any other way in which it did happen. It is said that the hole was not large enough for the foot of an ordinary man to have entered it; that he was walking north on the west edge of the plate, his left foot being on the plate, and yet it was his right foot that entered the hole, and that he must have crossed his legs to have accomplished it. Plaintiff says he was wearing a number eight shoe at the time of the accident. There was testimony that

his shoe was about eleven inches long and four inches wide, and it is argued that he could not have entered a hole which some witnesses said was only from three and one-half to four inches wide at the widest part of the hole. It was widest at the west end and diminished in width to a point fourteen inches towards the east.

It was in evidence that the heel of a number eleven shoe is three inches wide and three inches long, and the heel of a number eight shoe which plaintiff was wearing may have been smaller. Whatever the size of the shoe or the smallness of the hole, and however the foot may have entered it, plaintiff did step on the opening, which caused him to fall, and those that were near him at the time of the accident and went at once to his assistance found his foot had passed into the hole, which was about five inches deep at that place, and there is evidence that the foot could not be released until the plate was lifted.

As to the impossibility of the occurrence, it is not possible to hold that the entry of the foot into the hole is an impossibility when it is shown to have been in the hole immediately after plaintiff stepped upon or into it. Plaintiff was not able to state just how his foot entered the hole, but it got into it and threw him down, causing the injury. Evidently the foot was a close fit for the hole, which was about four inches wide.

The defect in the walk was an obvious one. It was admitted by the city engineer that it was dangerous and that it was repaired after the accident. The street foreman also admitted that the broken plate was in a sense dangerous, and that it was removed after the accident. He also said that in a test the heel of his shoe could be put in the hole, and by placing his left foot outside of the plate and in the gutter his right foot could be put in the hole up to the ankle. Under the evidence it is clear that the entrance of the foot into the hole cannot be regarded as a palpable physical impossibility. It is true, as defendant contends, that where the testimony of a witness is clearly contrary to physical law, the court should treat the testimony as wholly lacking in probative force and disregard it. Before that can be done, however, it must be demonstrated that the testimony is plainly and palpably incompatible with physical laws or indisputable physical facts. In *Sheppard v. Storage Co.*, 82 Kan. 509, 108 Pac. 819, it was said:

"Where there is some evidence tending to support a verdict to justify an appellate court in overturning it on the ground that it is contradicted by the

settled and unquestioned laws of nature or by some established principle of mathematics, mechanics, physics or the like, the undisputed physical facts must demonstrate beyond any reasonable doubt that the evidence is false and that the verdict is without support in fact or law." (Syl. ¶ 1.)

See, also, extended annotations of the rule in 8 A. L. R. 796; 21 A. L. R. 141. We conclude that the testimony falls short of such a demonstration, and that there was no error in finding for the plaintiff.

The other ground of error is the alleged misconduct of counsel in the argument of the case. It is based on the following statement and colloquy:

"By Mr. Walker: I say, Jim McDermott asked John O'Connell, when he came from the witness stand, what is your occupation? John O'Connell said, I am a laborer. Mr. McDermott said: What is a laborer? I well wondered why he should ask him such a question, because as a member of the court of industrial relations, he with Henry Allen went down—

"Mr. McDermott: Now we object—

"Mr. Walker: I am repeating it. He and Henry Allen went down into the coal-mining district and told those men whether they could work or not. They took the matter to the supreme court and they said after investigation that it wasn't a lawful court. (Mr. McDermott again objected.)"

On the objection the court stated:

"I don't remember exactly what the testimony was, such matters are a matter of public record, public knowledge. The jury will remember the testimony."

The facetious reference to an adventure of defendant's counsel and Henry Allen in the mining district was, of course, outside of any issue in the case, but it appears to be no more than a bit of banter, the like of which sometimes is indulged in by counsel in the course of a trial. It may have amused the jurors but is not likely to have prejudiced them. The quip seems to have arisen out of the innocent-looking question of a witness as to "What is a laborer?" In reply the witness said, "I do common labor, mix mortar, one thing and another." Another question was, "What else would be one thing and another." The witness replied, "Any kind of common labor."

We think no prejudice could have resulted from the incident and remarks. The use of extrinsic or impertinent matter by a counsel in an argument is not sufficient of itself to work a reversal. It must also appear to have prejudiced the rights of the defeated party. Prejudice, we think, has not been shown.

The judgment is affirmed.