No. 35,746

ARTHUR YOUNG, *Appellee,* v. KANSAS CITY PUBLIC SERVICE COMPANY, *Appellant.*

(135 P. 2d 551)

Opinion filed April 10, 1943.

*T. F. Railsback,* of Kansas City, argued the cause, and *Edwin S. McAnany* and *Thomas M. Van Cleave,* both of Kansas City, and *Charles L. Carr,* of Kansas City, Mo., were on the briefs for the appellant.

*James L. Hogin,* of Kansas City, argued the cause for the appellee.

The opinion of the court was delivered by

WEDELL, J.: This was an action by a passenger on a streetcar to recover damages for personal injuries sustained as a result of the streetcar company's alleged negligence in the operation of a streetcar step while plaintiff was descending from the car. Plaintiff prevailed and defendant appeals.

Appellant contends the trial court erred in overruling its motion for a new trial. All errors urged relate solely to that order. Such facts as need to be noted will be narrated in connection with the treatment of various alleged errors.

Appellant argues the trial court erred in refusing to instruct the jury that appellee was required to exercise due care in his own behalf. Appellant did not submit such an instruction but did ask the court to instruct upon the subject. Appellant had not pleaded appellee was guilty of contributory negligence in descending from the streetcar or in any other respect. In fact, appellant did not plead contributory negligence at all. The trial court ruled appellant had not tried the action upon the theory of contributory

negligence and that no evidence of lack of due care on the part of appellee was introduced to warrant the requested instruction.

Did the ruling constitute reversible error? Arthur Young, appellee, was a passenger on the streetcar of appellant, The Kansas City Public Service Company. He was on his way to work from his home in Kansas City, Mo., to the place of his employment in Kansas City, Kan. The streetcar had been traveling in a westerly direction on Minnesota avenue in Kansas City, Kan., and had stopped near appellee's place of employment. Appellee was in the act of descending from a door near the front and on the north side of the streetcar at the unloading zone located in the northeast corner of the intersection of Minnesota avenue and Ninth street. After the car stopped one step was lowered by the operator of the car. It was fourteen inches below the vestibule floor of the car and fourteen inches above the pavement, making a total distance of twenty-eight inches from the vestibule floor to the pavement. Appellee stepped onto the step with his right foot and toward the pavement with his left foot. Appellee's theory of appellant's negligence and his testimony in support thereof were substantially as follows: The operator of the car negligently raised the folding step before appellee's left foot was firmly planted on the pavement and before his right foot was disconnected from the step; the rising step caught the rear part of his right foot; while in such unstabilized position his right leg was thrown against his left leg and he was thrown sidewise, causing him to fall towards the east, which was towards the rear of the car; his hands and arms were stretched out before him; his right hand lit on the rail and the rear wheels of the car ran over it; he lost all of the fingers, all of the thumb except a short portion thereof, and approximately one-half of his hand.

Appellant's defense was not based upon the theory of contributory negligence but upon the theory the accident could not have happened in the manner indicated by appellee and his witnesses and that appellee fell after he had left the car. In support of its theory appellant introduced evidence as to the manner in which the door and step were operated, the over-all length of the car, the distance between the wheels of the car, the distance from the west end of the safety zone and the point on the rail where the injury occurred. Appellant also introduced the testimony of a few witnesses who claimed appellee had given three different narratives of the manner in which the accident occurred. The last narrative, in substance,

was as appellee related it at the trial. The first narrative, according to such witnesses, was that appellee claimed he had slipped on ice on the pavement after he had left the car. The second alleged narrative was that appellee claimed to have slipped on ice on the step of the car. Appellee denied he ever made statements he had slipped on ice. His denial was corroborated by a witness who was present at the time and place some of the alleged narratives were purported to have been given immediately following the accident. There was no direct evidence appellee negligently or otherwise stepped upon ice on the step of the streetcar or upon ice on the pavement, if ice actually existed at either place. There was an abundance of testimony, including that of appellant's own assistant division superintendent, that the pavement was dry and clean. The jury expressly found there was no snow, ice or moisture on the pavement of the safety zone on the day in question.

The trial court definitely instructed the jury relative to appellant's theory of defense. It expressly advised the jury if appellee was injured after he had been discharged safely from the car that there could be no recovery. The instruction covered the evidence and the theory of appellant's defense. Cases cited by appellant on the duty of courts to instruct on the subject of contributory negligence where such negligence is not pleaded but where evidence thereof is nevertheless introduced, obviously, are not applicable here. The result is this contention of appellant cannot be sustained.

Appellant argues certain special findings of the jury are inconsistent with each other and with the general verdict. That is not the basis upon which the special findings were challenged in the trial court. Certain designated findings were challenged upon the ground they were not supported by, but were contrary to, the evidence and upon the theory they disclosed bias, prejudice and passion on the part of the jury. Finding number fourteen, which assessed the damages, was one of the findings challenged by the motion filed in the district court. The ruling on that portion of the motion is argued by appellant now and it will be considered presently. In passing we may state that the contention as to the findings which is now made for the first time, if properly before us for review, could not be sustained.

The remaining contentions are all addressed to the subject of the alleged passion and prejudice of the jury. It is claimed the jury ignored certain physical facts which are inconsistent with and can-

not be reconciled with other testimony which the jury apparently believed. In this connection our attention is directed to a well-grounded doctrine that testimony of a witness, or witnesses, which is clearly contrary to settled and unquestionable laws of nature or indisputable physical facts should be rejected by courts as lacking probative force. (*Marley v. Arkansas City*, 135 Kan. 688, 11 P. 2d 704.) It also has been well said that where facts testified to are opposed to all natural laws and common experience, *so that it is inconceivable* any such thing could have occurred, courts will refuse to believe it, on the ground that they will take judicial notice of its incredibility. (10 *Blashfield Cyclopedia of Automobile Law and Practice,* § 6554, p. 232.) The doctrine, however, is properly invoked only when applied to a record which clearly requires its application. When courts cannot say it was a physical impossibility the accident happened in the manner testified to, they will leave the manner in which it occurred and its cause to the jury. (10 *Blashfield Cyclopedia of Automobile Law and Practice,* § 6554, pp. 234-236.) Before courts are warranted in ignoring or disregarding certain testimony, under this doctrine, it must be demonstrated beyond any reasonable doubt that the testimony is false and that the verdict is without support in fact or law. (*Sheppard v. Storage Co.*, 82 Kan. 509, 108 Pac. 819; *Marley v. Arkansas City,* supra.) Here it is an indisputable fact, a conceded physical fact, that appellant's streetcar ran over and cut off approximately one-half of appellee's right hand. The only matter left in dispute was therefore the manner in which the injury occurred. It is conceded testimony of appellee with respect to the manner in which the injury occurred is corroborated. The jury, under proper instructions, rejected appellant's theory and accepted appellee's theory upon that issue. The testimony which supports the verdict, while not as persuasive in some particulars, to our minds, as it might have been, nevertheless is not so plainly and palpably incompatible with physical laws or indisputable facts, or so inconceivable as to justify a court in substituting its judgment for that of the jury as to its credibility.

The amount of the verdict was $10,310.45. Appellant argues a verdict in so large an amount, where the sole permanent disability is the loss of half of a hand and where there was neither lengthened sickness nor extraordinary suffering, is so excessive as to clearly demonstrate the passion and prejudice of the jury. Upon that

premise it argues the verdict should have been set aside and a new trial should have been granted. It is, of course, true that a verdict actually rendered on bias, passion or prejudice cannot be permitted to stand. That is true whether the verdict be large or small. The mere fact, however, that a verdict may be excessive does not necessarily mean it was based on passion and prejudice. It may have been occasioned by a failure of the jury to properly consider and determine what amount of money would actually compensate for the injury sustained or it may have been the result of a tendency to be somewhat generous with the money of a particular defendant. It is common knowledge juries are not always as considerate and circumspect in that regard where the defendant is a corporation as it is where the action is between individuals. While such an attitude of laymen is understandable, by reason of circumstances upon which we need not dwell now, the bench and bar also understand that compensation for damages actually sustained, and not the individual or corporate entity of the defendant, constitutes the true basis of award.

In the record before us we find no claim of misconduct on the part of the jury or the prevailing party. There is no complaint counsel for appellee indulged in inflammatory statements or other improper tactics designed to create bias, passion or prejudice in the minds of the jurors. In fact, there is nothing in the record which remotely indicates passion or prejudice unless it can be said to be reflected in the amount of the verdict. The items of damage allowed were: (a) Pain and suffering, $1,000; (b) medical and hospital expense, $310.45; (c) (1) loss of past earnings, $500, (2) loss of future earnings, $7,000; (d) permanent injury, $1,500. In view of the entire record, including the itemization of damages, we cannot well say the amount of the verdict, in and of itself, discloses it was tainted with passion and prejudice.

But was the verdict excessive? Appellee, a colored man, was nearer forty-nine than forty-eight years of age at the time of the injury. His education was limited to the fifth grade. At one time he had been employed as a taxi driver for his son-in-law. Prior to 1936 he had worked for a number of motor-car companies and at one time had earned as much as $25 to $30 per week washing cars. His last employment was with the Bruce Motor Company, of Kansas City, Kan., in the capacity of supervising the cleaning and polishing of cars and checking batteries. His employment did not

require him to wash cars but it did include some manual labor such as is involved in changing tires and polishing cars. His employer testified in substance: Appellee was an exceptionally fine workman and very dependable; by reason of his experience he would be of some administrative value but he did not believe he would re-employ him unless the automobile business improved to a point where they needed a porter-supervisor.

Appellee started work for his present employer in 1936. His initial salary was $17.50 per week and after three years it was raised to $22.50 per week. In 1939 his employment was terminated entirely and he had no work for the period of a year. He was then re-hired by his present employer at his present salary of $20 per week. Appellee was confined to the hospital for a period of nineteen days. His hospital bill was $110.45 and his doctor bill was $200.

In support of appellant's contention the verdict was excessive it relies upon *Union Pacific Rly. Co. v. Milliken,* 8 Kan. 647 (1871); *K. P. Rly. Co. v. Peavey,* 34 Kan. 472, 8 Pac. 780 (1884); *Railway Co. v. Sledge,* 68 Kan. 321, 74 Pac. 1111 (1904); *Truman v. Railroad Co.,* 98 Kan. 761, 161 Pac. 587 (1916); *Leinbach v. Pickwick Greyhound Lines,* 135 Kan. 40, 10 P. 2d 33 (1932).

In support of the contention the verdict was not excessive appellee relies upon *Mo. Pac. Rly. Co. v. Mackey,* 33 Kan. 298, 4 Pac. 292; *Ellis v. Kansas City Public Service Co.,* 131 Kan. 555, 292 Pac. 939; *Whetstine v. Atchison, T. & S. F. Rly. Co.,* 134 Kan. 509, 7 P. 2d 501; *Linscott v. Hughbanks,* 140 Kan. 353, 37 P. 2d 26; *Baker v. Kansas Power & Light Co.,* 146 Kan. 258, 69 P. 2d 731. Some of the cases cited by the parties involve injuries somewhat similar to those in the instant case. In other cases the injuries were entirely different. In some of them the age of the injured party and various other important elements of damage vary greatly. It is not necessary to narrate the numerous facts contained in the cited cases or the facts found in many other cases which might be mentioned. The cases cited by both parties are all helpful and instructive in that they deal with fundamental principles involved in the measurement, or assessment, of damages. The basis for assessment of actual damages is compensation. It therefore has been well said, "No verdict is right which more than compensates; none which fails to compensate." (*Union Pacific Rly. Co. v. Milliken,* supra.)

No single definite method of assessment of damages has yet been devised. No scientifically accurate combination of methods has yet

been proposed, much less adopted. Certain methods of lay measurement have been condemned as radically and intrinsically wrong. Various guides for the assessment of compensation for injury have been considered, discussed and recommended as helpful in the judicial process of reaching a just award. Some of the most able opinions on this subject are to be found in the early history of this court. (*Union Pacific Rly. Co. v. Milliken,* supra [1871]; see, also, *Truman v. Railroad Co.,* supra [1916].) In every personal injury case which arises the respective parties seize upon some single method or several methods of measurement which have been held to be helpful in determining compensation. They stress such method or methods as lend themselves most favorably to their particular contention. Thus in the instant case appellant, interested in reducing the verdict, urges, in part, that the workmen's compensation law, although admitted not to be controlling in the case at bar, should be given great weight and consideration. It therefore cites, among other cases, the Truman case, *supra,* in which the workmen's compensation act was recognized as a courageous and practical attempt to measure damages for personal injuries to workmen in industries governed by the act. The opinion in that case, however, clearly discloses the damages were not assessed pursuant to the provisions of that law and that the act was recommended only as being helpful and hence worthy of consideration.

On the other hand, appellee, interested in sustaining the amount of the verdict, places great emphasis upon the method of assessment of damages based upon standard mortality tables. Those tables disclose appellee had a life expectancy of 21.63 years. It is true life expectancy is one of the elements to be considered in determining loss of earning power. Mortality tables purport to give only the average length of life. (*Whetstine v. Atchison, T. & S. F. Rly. Co.,* supra.) They make no pretense of predicting the length of the life of any certain individual. One difficulty with the expectancy basis of measurement is the questionable assumption the person's earning capacity will continue throughout his entire life expectancy the same as it is in his present health and vigor. (*Truman v. Railroad Co.,* supra.) Manifestly such an assumption is speculative and contingent. The older the individual the greater is the certainty that health and vigor will not continue and that such assumption is unwarranted.

The Milliken case, *supra,* is perhaps more nearly in point factually

than any other cited case. The verdict in the sum of $10,000 for the loss of a hand was there held to be so excessive as to require a new trial. It is, however, true, as appellee suggests, economic conditions seventy-two years ago were such that a dollar possessed far greater purchasing power than it does today. The sum of $10,000 was then considered a sizable fortune to be possessed by a laboring man or by many others. We are, therefore, not unmindful of the force of appellee's suggestion. In recognition thereof and other circumstances, previously indicated herein, we are not inclined to say the instant verdict is so excessive as to require us to set it aside in its entirety.

There is, however, another economic feature which counsel for appellant, especially in oral argument, urged with clarity and much persuasiveness. It is that under our present industrial system a common laborer at the age of forty-nine years has passed his peak of physical effectiveness and earning power. Many sources of employment available to him in previous years have become closed doors. As pathetic as that fact may be, it constitutes an element which cannot be ignored in determining what constitutes true compensation for injury.

In the Milliken case, *supra*, an entire hand was lost. In the case at bar only one-half of a hand was lost. While wide discretion must be left to juries in determining what constitutes compensation and while we are therefore reluctant to disturb their decisions, we have concluded the verdict in the total sum of $10,310.45 is excessive. After making due allowances for differences of opinion, we have concluded the award is at least $2,500 too much.

Where a verdict manifestly is rendered under the influence of passion and prejudice, it cannot be cured by a remittitur, but where it is not based thereon but is merely excessive, the vice in the verdict does not permeate the entire verdict and may be cured by a remittitur consented to by the prevailing party. (*Truman v. Railroad Co.; Leinbach v. Pickwick Greyhound Lines,* both supra; *Taylor v. F. W. Woolworth Co.,* 146 Kan. 841, 73 P. 2d 1102; *Motor Equipment Co. v. McLaughlin,* ante, p. 258, 133 P. 2d 149.)

The case will be remanded to the district court with instructions to give appellee the option of accepting a modified judgment in the sum of $7,810.45 with the alternative that a new trial be granted as to all issues. In the event appellee elects to accept such option the judgment in the sum of $7,810.45 is hereby approved. It is so ordered.