YORK MOTOR EXPRESS COMPANY *v.* STATE,
Use of Hawk, et al.
YORK MOTOR EXPRESS COMPANY *v.* LUTCHKO,
Administrator
YORK MOTOR EXPRESS COMPANY *v.* DEAN
(Three Appeals in One Record)

[No. 195, October Term, 1949.]

528

*Decided June 8, 1950.*

530

The cause was argued before MARBURY, C. J., and DELAPLAINE, COLLINS, GRASON, HENDERSON and MARKELL, JJ.

*Jesse Slingluff, Jr.,* and *Franklin G. Allen,* with whom were *Marbury, Miller & Evans* on the brief, for the appellant.

*Theodore Sherbow,* with whom was *James J. Lindsay* on the brief, for the appellees.

DELAPLAINE, J., delivered the opinion of the Court.

These three cases arose out of a collision on York Road between a convertible Ford coupe owned and driven by Herbert E. Dean, age 23, of Baltimore County, one of the plaintiffs, and a tractor-trailer owned by York Motor Express Company, defendant, and operated by Edward E. Donnelly, age 25, of Lancaster, Pennsylvania. The accident happened on February 26, 1948, about 2:30 a.m. Dean was seriously injured, and William Patrick Hawk, a passenger in his automobile, was killed.

The testimony of Dean and Donnelly, the only eyewitnesses of the accident, was in irreconcilable conflict, and resort was had to the testimony of witnesses describing the location of the vehicles and the marks and debris on the road after the accident. From this testimony the jury found that Donnelly was negligent, but Dean was not, and awarded a verdict in each case in favor of plaintiff against York Motor Express Company.

In the suit brought by the State of Maryland for the use of Hawk's widow and infant son, the jury rendered a verdict for $15,000.

In the suit brought by John Lutchko, administrator of Hawk's estate, to recover funeral expenses, the jury rendered a verdict for $300.

In Dean's suit for damages, the jury awarded $2,500.

Defendant, appealing here from the judgments entered upon the verdicts, complains of the trial judge's refusal to enter judgments n.o.v.

The vehicles collided on a sharp curve between two hills about three miles north of Parkton in Baltimore County. Dean was driving north toward York, Donnelly south toward Baltimore. Dean testified that while he was driving downgrade at a speed of not more than 30 miles an hour, he saw the headlights of defendant's tractor-trailer coming down the next hill. He estimated that it was traveling at a speed of between 50 and 60 miles per hour, and when it was about 200 feet away it swerved across the center line but went back, and when about 100 feet away it came across the line again, and this time the tractor crashed into his car while the trailer "jackknifed" toward the tractor at an angle of 45 degrees.

On the contrary, Donnelly testified that the Ford coupe hit the tractor-trailer west of the white center line. He claimed that as there had been a drizzling rain during the night, the road was wet and slippery, and he applied his brakes gently, fearing that if he tried to stop suddenly the trailer would "jackknife." But he said that the trailer broke loose from the tractor, and he could not then apply the brakes, as the air hose broke when the trailer became disconnected. According to one of the police officers, the tractor went more than 100 feet into the field on the east side of the road. The trailer turned over and landed on top of the rear end of the Ford, which stopped in the center of the road, with its front east of the center line and its rear west of it.

Appellant contended that there was no competent evidence of negligence on the part of defendant legally sufficient to justify submission of the cases to the jury. In automobile accident cases, as in other negligence actions, the party alleging that he has sustained injury as the result of negligence of another in the operation of an automobile has the burden of establishing negligence on the part of the defendant by a preponderance of the evidence. But a case should not be withdrawn from the jury if there is any testimony of sufficient probative force and any inferences of fact fairly deducible therefrom to enable an ordinarily intelligent mind to draw a rational conclusion therefrom in support of the plaintiff's right to recover. If there is any evidence competent, pertinent and coming from a legal source, however slight, legally sufficient to prove the plaintiff's case, a demurrer prayer should not be granted. *State, for Use of Bowman v. Wooleyhan Transport Co.,* 192 Md. 686, 65 A. 2d 321.

First of all, we have Dean's positive testimony that he did not cross the white center line, and that Donnelly while driving the tractor-trailer at high speed suddenly swerved across the line, thereby causing the collision. Next, we have testimony as to the size and weight of the tractor-trailer. It was a large and heavy truck, 8 feet wide and 35 feet in length, and weighing over four tons, and carrying a load of more than ten tons. It is common knowledge that it has been the tendency in recent years to increase the size and weight of trucks used on the public highways. In cases arising from collisions, the size and weight of such vehicles are important factors in determining questions of negligence. The drivers of these vehicles, having knowledge of their width and length, owe to other motorists on the highway the duty to take these elements into consideration in the operation of their vehicles. The fact that some vehicles are of a greater size or weight than the average car gives them no additional rights on the highways. Every motorist is required to exercise ordinary care in the operation of

his vehicle in view of all the circumstances. *Nevin Bus Line v. Paul R. Hostetter Co.*, 305 Pa. 72, 155 A. 872.

Further, we have the testimony as to the foggy atmospheric condition and the slippery condition of the road and the inability of the truck driver to explain how the tractor and trailer became disconnected. Evidence of bad atmospheric conditions existing at the time of an accident, such as fog, is admissible as bearing upon the range and extent of visibility as well as upon the degree of care and caution that should be exercised by motorists under such conditions. While the skidding of an automobile is not of itself so unusual as to furnish evidence of the driver's negligence, nevertheless the speed of the automobile prior to the skidding and the care in handling it, particularly in the application of the brakes, are factors to be considered in determining whether or not there was an exercise of due care. The driver of a car must exercise unusual care to keep it under control on a slippery road, so as not to cause injury to any other vehicle by skidding into it, particularly where the car is being driven on a grade or curve, or where it is traveling at a considerable speed. The degree of care to be exercised by a motorist in a fog varies with the conditions of the fog, the highway, and the traffic, and may be affected by the type, size and weight of the vehicle. *Peasley v. White*, 129 Me. 450, 152 A. 530, 73 A. L. R. 1017.

We are asked to reverse the judgments on the ground that Dean's version of the accident is so contrary to physical law and so unbelievable that it should not be accorded any probative value. Appellant contends that Dean's testimony should be rejected as incredible in view of the location of (1) the dual-tire marks on the dirt shoulder on the west side of the road, (2) the "gouge" marks, evidently cut into the road by metal, and (3) the broken glass and other debris under and near the vehicles. Appellant contends that the dual-tire marks indicate that the collision occurred on the west side of the road where the tire marks ended, and that the

"gouge" marks, which extended toward the vehicles in the center of the road, indicate that the vehicles were hurled in a southeastern direction. There was testimony that the debris was scattered under the trailer and for some distance north of it. Appellant contends that, since the collision was between a heavily loaded tractor-trailer going downgrade and a light automobile going upgrade, the point of impact must have been some distance north of the place where the vehicles came to a stop, and the force of the impact must have been southward, and consequently the debris could not have been thrown very far north of the place of collision. Therefore, appellant contends, the location of the debris proves that "the collision occurred where the tractor-trailer had wheels on the western shoulder or so short a distance to the south of that point as to make it impossible for the tractor-trailer to have moved across to the eastern side of the road before the impact."

We, of course, accept the rule that the court should disregard any testimony that attempts to establish something physically impossible within common knowledge and experience, or something contrary to indisputable scientific principles or laws of nature within the court's judicial knowledge. *Commissioners for Anne Arundel County v. Vanskiver,* 166 Md. 481, 483, 171 A. 705; *Seiwell v. Hines,* 273 Pa. 259, 116 A. 919, 21 A. L. R. 139; *Lamp v. Pennsylvania R. Co.,* 305 Pa. 520, 158 A. 269, 84 A. L. R. 1217. This rule is applied whenever a witness with good eyesight testifies that in broad daylight he looked for an approaching car but did not see any, although one was within his unobstructed view at the time. *Baltimore Transit Co. v. Young,* 189 Md. 428, 435, 56 A. 2d 140; *Baltimore & Ohio R. Co. v. State, for Use of Andrews,* 190 Md. 227, 58 A. 2d 243. We emphasize, however, that the court should use special caution before deciding to reject testimony on the ground that it is contrary to the laws of science, inasmuch as it is so often difficult to determine accurately the effect of such laws. As the Court observed in *Stokes v. Metropolitan*

*St. R. Co.*, 173 Mo. App. 676, 160 S. W. 46, 47: "The testimony of unimpeached witnesses should not be lightly waived aside as impossible or incredible. Common experience and observation teaches us that strange and astonishing things sometimes happen in the physical world, and it would not do to give to dogmatic and undemonstrated conclusions, respecting natural laws, precedence over the testimony of apparently credible witnesses." So, we recognize that it is not generally safe to rely exclusively on testimony as to marks made by vehicles on a road for judicial determination of the movements of the vehicles just before a collision. *Shafer v. State, for Use of Sundergill,* 171 Md. 506, 509, 189 A. 273. To justify the Court of Appeals in rescinding a verdict on the ground that the evidence supporting it is incredible, the undisputed physical facts must demonstrate that the evidence is false beyond a reasonable doubt. *Sheppard v. Wichita Ice & Cold Storage Co.,* 82 Kan. 509, 108 P. 819, 28 L. R. A., N. S., 648.

Appellant relied on the decision of the Connecticut Supreme Court of Errors in *Mlynar v. A. H. Merriman & Sons,* 114 Conn. 647, 159 A. 658. In that case the plaintiff claimed that, while he was driving southwardly on the west side of the road, the defendant's milk truck was driven suddenly across the road directly into the path of his car. It was conclusively established, however, that the truck driver had been driving along the dirt shoulder west of the traveled portion of the road, stopping frequently to deliver milk, and that at the time of the collision the truck was parked along the curb entirely off the traveled portion of the road. It was also established by uncontradicted testimony that immediately after the accident the truck was still on the dirt shoulder close to the curb. Thus it was clear that the plaintiff's testimony that the truck was driven across the street into his car was incredible.

The difference between the Connecticut case and the case before us is apparent. Here both of the vehicles were rapidly moving. The tractor-trailer was coming

down one hill, the Ford down another. It had been a rainy night, the atmosphere was foggy, and the road was wet and slippery. The trailer became disconnected from the tractor. The truck driver did not know whether the trailer became disconnected before the accident, or at the moment of the impact, or at the time the trailer turned over. The trailer and the Ford spun around so fast that it still remains a mystery how the trailer landed on top of the rear end of the Ford. The tractor ran wildly off the road. The truck driver was asked how, if the Ford was on the west side of the road he pushed the Ford off that side and managed to get by it into the field on the east side of the road. He replied that he did not know. All that he could recall was that it was "a rough ride," and he was "just hanging on." Dean testified that when the tractor struck his automobile, he was knocked unconscious, and he did not regain consciousness until three days later.

Because of the rapidity of the motion of the vehicles both before and after the collision, and the many uncertainties in the testimony, and in view of the fact that a collision could have been caused if either the tractor or the trailer crossed the center line but for a moment and for only a short distance, it cannot be judicially declared that the location of the marks and debris on the road show that Dean's testimony is incredible. It is, therefore, our opinion that Dean's testimony and the additional testimony from which negligence may be inferred were legally sufficient for submission to the jury.

*Judgments affirmed, with costs.*